Joe McBRIDE and Connie McBride, Petitioners,

v.

SHAWNEE COUNTY, KANSAS COURT SERVICES,

and

Carla J. Stovall, Attorney General, State of Kansas, Respondents.

No. 98–3178–DES.

United States District Court, D. Kansas.

Sept. 17, 1999.

Steven R. Zinn, Office of Appellate Defender, Topeka, KS, for petitioners.

Jared S. Maag, Office of Attorney General, Topeka, KS, for respondents.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on a petition for a writ of habeas corpus (Doc. 1) filed pursuant to 28 U.S.C. § 2254. Petitioners are each serving sentences of twenty four (24) months probation for one count of cultivation of marijuana and one count of failure to pay drug tax. The court finds that the papers filed by the parties and the state court record are sufficient to resolve this case. For the reasons set forth below, petitioners application for habeas corpus relief is denied.

## I. FACTUAL BACKGROUND

In July 1995, the Topeka Police Department discovered eighty-six marijuana plants growing outside petitioners' residence. Petitioners admitted to ownership of the plants, but said the plants were used for religious purposes. On April 26, 1996, petitioners were charged in the District Court of Shawnee County, Kansas, with one count each of marijuana cultivation in violation of Kan.Stat.Ann. § 65–4163(a)(3); failure to pay drug tax in violation of Kan. Stat.Ann. § 79–5201, et seq.; and possession of drug paraphernalia in violation of Kan.Stat.Ann. § 65–4150, et seq.

Petitioners filed a motion to dismiss on First Amendment grounds, asserting the marijuana was an essential part of their religious practice of the Rastafarian faith. Following a hearing, the motion was de-

nied. The trial judge indicated that he questioned whether the McBrides were Rastafarian practitioners, there was no evidence that they needed the quantity of marijuana grown to practice their religion, and that religious practices may be restricted in the public interest. Before trial, the District Attorney filed a Motion in Limine to preclude the petitioners from raising the "Rastafarian defense". The motion was granted. Based on the stipulated facts, the petitioners were each found guilty of marijuana cultivation and drug tax violations.

The petitioners presented two issues to the Kansas Court of Appeals: (1) whether the trial court improperly excluded the petitioners' defense of cultivating marijuana for religious purposes in violation of the Religious Freedom Restoration Act; and (2) whether allowing members of the Native American Church ("NAC") to use peyote but prohibiting members of the Rastafarian faith from using marijuana violates the First and Fourteenth Amendments to the United States Constitution. The Kansas Court of Appeals affirmed the petitioners' convictions. *State v. McBride*, 24 Kan.App.2d 909, 955 P.2d 133 (1998). The Kansas Supreme Court denied review. On June 5, 1998, the petitioners filed for federal habeas relief.

## II. STANDARD OF REVIEW

A person in custody pursuant to a state court judgment on the merits is only entitled to federal habeas corpus relief if the claim adjudicated by the state court:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to clearly established fed-

eral law if: "(1) the state court decision is in square conflict with Supreme Court precedent which is controlling on law and fact; or (2) if its decision rests upon an objectively unreasonable application of Supreme Court precedent to new facts." *LaFevers v. Gibson,* 182 F.3d 705, 1999 WL 394508 (10th Cir.1999). Quite simply, the federal court must "defer to state court decisions." *Kanikaynar v. Sisneros,* 1999 WL 624450 (10th Cir.1999).

## III. DISCUSSION

Both marijuana and peyote are controlled substances in Kansas. Kan.Stat. Ann. § 65–4105(d) (1998 Supp.). Kansas law provides an exemption for "any person who is a member of the Native American Church, with respect to use or possession of peyote, whose use or possession of peyote is in, or for use in, bona fide religious ceremonies of the Native American Church." Kan.Stat.Ann. § 65–4116(c)(8) (1998 Supp.).

█ The Rastafarian petitioners argue that they are entitled to a religious exemption for using marijuana because the NAC is granted an exemption for peyote. The petitioners claim that the peyote exemption violates both the Establishment and the Equal Protection Clauses of the United States Constitution.

█ The Free Exercise Clause of the First Amendment guarantees absolute constitutional protection of religious belief, but only qualified protection of religious conduct. *Cantwell v. Connecticut,* 310 U.S. 296, 303–04, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). A state may enact a neutral law that incidentally burdens religious conduct. *McBride,* 955 P.2d at 138. The Kansas Court of Appeals reasonably found that the Kansas drug laws applied to everyone in the state of Kansas, and the laws placing an incidental burden on the petitioners' practice of religion were constitutional.

█ Although Kansas can regulate religious conduct, it may not approve one religion's conduct and bar the same religious conduct of another religion if both religions are similarly situated. The Establishment and Equal Protection Clauses require state neutrality and prevent a state from passing laws which prefer one religion over another. *Olsen v. Drug Enforcement Admin.,* 878 F.2d 1458, 1463 n. 5 (D.C.Cir.1989) (establishment and equal protection analysis converge in cases such as petitioners); *Walz v. Tax Comm'n,* 397 U.S. 664, 696, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970) (establishment requirement of neutrality "in its application requires an equal protection mode of analysis").

The "threshold question" in this case is whether the Rastafarian petitioners are similarly situated to NAC members. *McBride,* 955 P.2d at 139. The Kansas Court of Appeals found three reasons to hold that Rastafarians are not similarly situated to the NAC: (1) The frequency of use and quantity of drugs consumed differed greatly between the two religions; (2) Peyote and marijuana are not the same drug and they have a substantially different effect on society; and (3) The Kansas peyote exemption was passed under the ambit of federal trust responsibility. *Id.*

Several federal and state courts have held the peyote exemption is constitutional because the NAC is not similarly situated with other religions. See *Olsen,* 878 F.2d at 1458 (holding Ethiopian Zion Coptic Church which encourages uncontrolled marijuana use was not similarly situated with the NAC); *United States v. Rush,* 738 F.2d 497 (1st Cir.1984) (Ethiopian Zion Coptic Church is not similarly situated with NAC); *State v. Peck,* 143 Wis.2d 624, 422 N.W.2d 160 (Ct.App.1988) (Israel Zion Coptic Church is not similarly situated with NAC). To issue a writ of habeas corpus, the court must find that the Kansas Court of Appeals decision is either in square conflict with Supreme Court cases or an objectively unreasonable interpretation. *LaFevers,* 182 F.3d 705. The court does not find the Kansas Court of Appeals decision unreasonable. For the following reasons, the petitioners' request for a writ of habeas corpus is denied.

First, the members of the Rastafarian faith are not similarly situated with NAC members because their marijuana use is uncontrolled. Dr. Paul Alan Mirecki, Associate Professor of Religious Studies at the University of Kansas, testified that the Rastifarian religion is a loosely structured religion, the practice of which is primarily up to the individual. The Rastafarian faith has no central text to direct marijuana use. Rastafarians smoke marijuana either in a group or "whenever the mood strikes." Mr. McBride testified that he knows of no set time, amount, or procedure for smoking the marijuana as part of the Rastafarian faith. The Rastafarians' uncontrolled use "make[s] the administration of a regulatory scheme for the religious use of marijuana nearly impossible." *McBride*, 955 P.2d at 140.

Unlike the Rastafarians' uncontrolled marijuana use, peyote is used by NAC members in ceremonies called "road meetings." The Kansas Court of Appeals described the road meetings as follows: "usually between midnight and dawn. The ceremonies themselves are elaborate and lengthy and include the services of a tribal elder called a 'roadman' and other assistants who prepare the site and procure the tepee or lodge for the meeting." *Id. See United States v. Boyll*, 774 F.Supp. 1333, 1335–36 (D.N.M.1991) (providing a detailed description of the road meetings and the NAC's religious use of peyote). "The inherent complexity and planning required for such a gathering does not appear to promote the uncontrolled use of an otherwise controlled substance." *McBride*, 955 P.2d at 140.

The NAC issues membership cards which help to monitor peyote use. *Id.* Members of the NAC consider any use of peyote outside the circumscribed ritual sacrilegious. See *Olsen*, 878 F.2d at 1464. The NAC's view that any use outside the ceremony is sacrilegious reinforces the state's prohibition and is sufficiently narrow to permit state enforcement. *McBride*, 955 P.2d at 140. However, the Rastafarian's uncontrolled use of marijuana makes state enforcement nearly impos-

sible. Therefore, the Rastafarians and NAC are not similarly situated.

The petitioners argue that it is improper for the court to consider the petitioners' uncontrolled use because it is central to the Rastafarian faith. "It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of a particular litigant's interpretation of those creeds." *Hernandez v. Commissioner*, 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989). However, the court does not question the centrality or validity of the Rastafarian faith. The two religions are not similarly situated because the circumstances surrounding their drug use is drastically different. State enforcement of drug laws is severely compromised in the context of a marijuana exemption, but not a peyote exemption.

Second, the religious exemption in question is for peyote not marijuana. Although both drugs are classified as a schedule I controlled substance, peyote and marijuana are not the same drug, a point which is overlooked by petitioners. There are over one hundred types of controlled substances listed in schedule 1, including heroin, codeine methyl bromide, and morphine methyl bromide. See Kan.Stat.Ann. § 65–4105. Not all drugs listed in schedule 1 pose the same threat to the individual or to society.

Peyote and marijuana are not abused at the same rate, and their abuse has a substantially different effect on society. The Kansas Court of Appeals recognized the statistical difference in peyote and marijuana abuse:

> The actual abuse and availability of marijuana in the United States is many times more pervasive ... than that of peyote.... The amount of peyote seized and analyzed by the DEA between 1980 and 1987 was 19.4 pounds. The amount of marijuana seized and analyzed by the DEA between 1980 and 1987 was 15,302,468.7 pounds. This overwhelming difference explains why an accommodation can be made for a religious organization which uses peyote

in circumscribed ceremonies, and not for a religion which espouses continual use of marijuana.

*McBride,* 955 P.2d at 140. (citing *Olsen,* 878 F.2d at 1463). Although these statistics are dated, they demonstrate the drastic difference in abuse of the controlled substances. The members of the NAC and Rastafarian faith are not similarly situated because the drugs they seek to use in religious practice are not similar.

Finally, the two religions are not similarly situated because the NAC has a political status unlike that of the Rastafarians. Native American tribes occupy a unique political position in the federal system and are considered domestic dependent nations. *Cherokee Nation v. Georgia,* 30 U.S. (5 Pet.) 1, 7–8, 8 L.Ed. 25 (1831). Under the doctrine of trust responsibility, the federal government is required to promote tribal self-government and cultural integrity of Native Americans. *McBride,* 955 P.2d at 138 (citing *Morton v. Mancari,* 417 U.S. 535, 541–42, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974)). As "guardian-ward", the federal government may grant Native Americans special rights and status under trust responsibility. *Mancari,* 417 U.S. at 551, 94 S.Ct. 2474. Such laws are based upon the political relationship existing between the tribes and federal government and the *sui generis* legal status of Native Americans. *Id.* at 544, 94 S.Ct. 2474. *See Blacks Law Dictionary* 1286 (5th ed.1979) (defining *sui generis* as "Of its own kind or class; i.e., the *only* one of its own kind").

The Kansas peyote exemption is an attempt by the Kansas Legislature to conform state-tribal relations to that of federal-tribal relations. *McBride,* 955 P.2d at 138 (citing Minutes of the Senate Committee on Public Health and Welfare, February 27, 1981, p. 1 (Statement of Senator John Chandler)). The Kansas peyote exemption is modeled after the federal peyote exemption. *See* 21 C.F.R. § 1307.31 (1997). "The importation of federal trust responsibility into the realm of the state-tribal relations ... is by no means improper and has been sanctioned by other courts." *Id.* at 139. *See Livingston v.*

*Ewing,* 601 F.2d 1110, 1115–16 (10th Cir. 1979) (city ordinance promoting Native American crafts under trust responsibility); *St. Paul Intertribal Housing Board v. Reynolds,* 564 F.Supp. 1408, 1412 (D.Minn. 1983) (state Indian housing program under trust responsibility).

■ Laws passed pursuant to trust responsibility will be constitutional so long as the laws are rationally connected to fulfilling the trust responsibility and protecting the *sui generis* legal status. *Mancari,* 417 U.S. at 555, 94 S.Ct. 2474. The history behind the federal peyote exemption clearly shows "religion is an integral part of Indian culture and that the use of such items as peyote are necessary to the survival of Indian religion and culture." *Rush,* 738 F.2d at 513 (citing *Peyote Way Church of God, Inc. v. Smith,* 556 F.Supp. 632, 637 (N.D.Tex.1983)). "The traditional [Indian] ceremonial use of the peyote cactus as a religious sacrament has for centuries been integral to a way of life, and significant in perpetuating Indian tribes and cultures." 42 U.S.C. § 1996a(a)(1). Like the federal peyote exemption, the Kansas exemption directly supports Native American culture by advancing Native American religion which is an integral part of their way of life. The Kansas peyote exemption is rationally related to trust responsibility.

The petitioners argue that the peyote exemption is not rationally related to trust responsibility. The petitioners claim the peyote exemption does not support tribal sovereignty because a state may apply its drug laws and tribal sovereignty is dependent upon the federal government and not the states. *Rice v. Rehner,* 463 U.S. 713, 719, 103 S.Ct. 3291, 77 L.Ed.2d 961 (1983). In *Employment Division v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), the Supreme Court held that an Oregon drug law which did not exempt religious use of peyote was constitutional. *Id.* at 890, 110 S.Ct. 1595. The Court recognized that a state may choose to create a peyote exemption: "to say that a nondiscriminatory religious-practice ex-

emption is permitted, or even that it is desirable, is not to say that it is constitutionally required." *Id.*

In response to the *Smith* case, Congress amended the American Indian Religious Freedom Act to require all federal and state drug laws to exempt peyote use for any traditional Native American Religion. 42 U.S.C. § 1996a(b)(1). Congress passed the law because although the federal government and twenty-eight states had peyote exemptions, twenty-two states did not and "this lack of uniformity has created hardship for Indian people who participate in such religious ceremonies." 42 U.S.C. § 1996a(a)(3).

The fact that a peyote exemption was not required in the past does not mean that tribal self-government is not advanced. The peyote exemption indirectly supports tribal self-government. Supporting the Native American religion allows Native Americans to bond spiritually and encourages a sense of community, which is essential to tribal self-government. Even if petitioners are correct and the goal of tribal self-government is not advanced, the petitioners must acknowledge the dual purpose of trust responsibility. "The trust relationship between the United States and the Indians is broad and far reaching." *Reynolds,* 564 F.Supp. at 1413. Trust responsibility encourages both tribal self-government and cultural integrity. As discussed above, the Kansas peyote exemption is under trust responsibility because it promotes Native American culture.

The petitioners also argue the Kansas peyote exemption is not based on the political status of Native Americans because non-Native Americans can become members of the NAC. The peyote exemption is granted to "any person" who is a member of the NAC, not just Native Americans. *See* Kan.Stat.Ann. 21–3110(14); *Boyll,* 774 F.Supp. at 1340 (holding the federal peyote exemption was not limited to Native American members of the NAC). The petitioners claim the peyote exemption applies to the NAC as a specific religion rather than as a political group.

Regardless of the racial classification of its members, the NAC plays a central role in Native American culture. The state has chosen to protect that culture by allowing the NAC to use peyote in its religious ceremonies. The fact that non-Indians can become members does not change the *sui generis* and political status of the NAC. It also does not change the fact that the NAC and Rastafarians are not similarly situated because they use different drugs under different circumstances.

The Kansas Court of Appeals was not unreasonable in its determination that the NAC and Rastafarian religions are not similarly situated. Because the two religions are not similarly situated the petitioners are not entitled to relief under either the Establishment or Equal Protection Clauses.

**IT IS THEREFORE BY THE COURT ORDERED** that petitioners' application for a writ of habeas corpus (Doc. 1) is denied.