

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-2-2001

# Steele v. Blackman

Precedential or Non-Precedential:

Docket 00-3116

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Steele v. Blackman" (2001). *2001 Decisions.* Paper 1.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/1

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 2, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 00-3116

GARY STEELE
Appellant

v.

J. SCOTT BLACKMAN, INS, District Director for
Philadelphia District

On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Civil Action No. 99-cv-01256)
District Judge: Honorable Thomas I. Vanaskie,
Chief Judge

Argued September 11, 2000

BEFORE: McKEE, RENDELL and STAPLETON,
Circuit Judges

(Opinion Filed: January 2, 2001)

      Sandra L. Greene (Argued)
      140 Roosevelt Avenue, Suite 202
      York, PA 17404
       Attorney for Appellant

J. Justin Blewitt
Office of U.S. Attorney
235 North Washington Avenue
William J. Nealon Federal Building
Scranton, PA 18501
 and
Alison Marie Igoe (Argued)
John D. Williams
Terri J. Scadron
U.S. Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, D.C. 20044
 Attorneys for Appellee

OPINION OF THE COURT

STAPLETON, Circuit Judge:

Gary Steele is a former resident immigrant who has been denied admission into the United States under 8 U.S.C. SS 1182(a)(2)(A)(i)(II) and (a)(2)(C). The District Court found that Steele is not entitled to apply for any waiver of inadmissibility because he is an "aggravated felon." Instrumental to this conclusion was the District Court's determination that one of Steele's prior state misdemeanor convictions constituted a conviction of an aggravated felony under 8 U.S.C. S 1101(a)(43)(B). We will reverse.

I.

Gary Steele is a citizen of Grenada who has been a lawful permanent resident of the United States since 1981. He has resided in New York state and has worked there as an electrician and musician. Steele has two daughters, four sisters, and three brothers, all of whom are United States citizens.

The "rap sheet" submitted to the immigration judge as evidence of Steele's criminal record r eflects that Steele has

2

three New York state misdemeanor convictions.[1] Steele's rap sheet indicates that in 1991, he was arrested for "Criminal Sale of Marihuana," a class A misdemeanor under New York's Penal Law S 221.40. We note that Penal Law S 220.40 defines "sale" to include "giv[ing] or dispos[ing] of to another" so that one may be convicted of "criminal sale" without evidence of a sale as commonly understood. Steele pled guilty to this offense and was sentenced to probation for three years. In 1993, Steele was again arrested for the same crime. Again, he pled guilty and paid a fine of five hundred dollars. In 1994, Steele was arrested for the "Criminal Possession of Marihuana," a class A misdemeanor under New York Penal Law S 221.05. Steele pled guilty and was sentenced to community service. Steele served no time in jail for any of these offenses.

On February 12, 1998, Steele traveled to Grenada to attend the funeral of his mother. He remained in Grenada for one week and then returned to the United States. Upon arrival, Steele was questioned by an Immigration and Naturalization Service ("INS") officer who asked if Steele was a Rastafarian[2] and if he used marijuana. Steele denied

_____

1. Steele, in a sworn statement, readily admitted the existence of these convictions to the immigration authorities. His statement provides no information about those convictions or the proceedings leading up to them beyond that reflected on the "rap sheet."

2. Steele indeed is a Rastafarian, and this may explain his consecutive drug offenses. (A. 54.) Rastafarianism is a religion which proclaims the divinity of Haile Selassie, former Emperor of Ethiopia, and anticipates the eventual redemption of its adherents from the "Babylon" of white oppression.

> [Rastafarianism] is a religion whichfirst took root in Jamaica in the
> nineteenth century and has since gained adherents in the United
> States. See Mircea Eliade, Encyclopedia of Religion 96–97 (1989). It
> is among the 1,558 religious groups sufficiently stable and
> distinctive to be identified as one of the existing religions in this
> country. See J. Gordon Melton, Encyclopedia of American Religions
> 870–71 (1991). Standard descriptions of the religion emphasize the
> use of marijuana in cultic ceremonies designed to bring the believer
> closer to the divinity and to enhance unity among believers.
> Functionally, marijuana – known as ganja in the language of the
> religion – operates as a sacrament with the power to raise the
> partakers above the mundane and to enhance their spiritual unity.

currently using marijuana but admitted that he was arrested three times for marijuana-r elated misdemeanors. Following the interview, the INS took Steele into custody and served him with a formal charging document.

Steele was charged with inadmissibility into the United States under both 8 U.S.C. S 1182(a)(2)(A)(i)(II), which makes inadmissible any alien who has been convicted of "a violation of . . . any law . . . of a State . . . r elating to a controlled substance," and 8 U.S.C. S 1182(a)(2)(C), which makes inadmissible any alien who "has been an illicit trafficker in any controlled substance." At a hearing held on April 16, 1998, an immigration judge sustained the charges against Steele and ordered Steele r emoved to Grenada. The immigration judge also concluded that because Steele had committed an aggravated felony, he was barred by statute from any discretionary relief fr om inadmissibility, despite the fact that all of Steele's convictions constituted misdemeanors under New York state law.

Steele appealed to the Board of Immigration Appeals ("BIA"), asserting that he had not committed an aggravated felony and had a right to apply for a waiver and r elief from deportation under 8 U.S.C. S 1182(c), 8 U.S.C.S 1182(h), and 8 U.S.C. S 1229b(a). Over a year later , on May 7, 1999, Steele's appeal was dismissed by the BIA. The BIA affirmed the judgment of the immigration judge that Steele was inadmissible and barred from any discr etionary relief because he had committed an aggravated felony as defined in 8 U.S.C. S 1101(a)(43).

On July 6, 1999, Steele filed a petition for habeas corpus with the United States District Court for the Middle District of Pennsylvania. Steele argued, inter alia, that the BIA erred in determining that his misdemeanor drug convictions amounted to an "aggravated felony." The District Court determined that Steele failed to establish any legal error.

_____

United States v. Bayer, 84 F.3d 1549, 1556 (9th Cir. 1996). Steele has not claimed, nor has any court recognized, a legal right of Rastafarians to use marijuana as a part of their religious observance. See id. at 1556–59; McBride v. Shawnee County, 71 F. Supp. 2d1098, 1100 (D. Kan. 1999).

4

Steele filed a timely notice of appeal to this Court and was then deported to Grenada, pursuant to 8 C.F.R. S 241.33 (2000) (authorizing the execution of a deportation order once it becomes final).

II.

The District Court correctly concluded that it had jurisdiction under 28 U.S.C. S 2241, despite the judicial review limiting provisions of the Anti-T errorism and Effective Death Penalty Act ("AEDPA"), Pub L. No. 104-132, 110 Stat. 1214, and the Illegal Immigration Refor m and Immigrant Responsibility Act ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (collectively "the 1996 Amendments"). We held in Sandoval v. Reno, 166 F .3d 225 (3d Cir. 1999), that the 1996 Amendments did not foreclose district courts from hearing petitions for habeas corpus following removal orders where the petitioner has been convicted of an aggravated felony. See Sandoval, 166 F .3d at 235 ("ADEPA S 440(a) and IIRIRA S 309(c)(4)(G) ar e most reasonably understood as foreclosing judicial review under the APA, and not as relating to habeas jurisdiction under 28 U.S.C. S 2241."). We based our decision in Sandoval on a line of Supreme Court precedent extending back to Ex parte McCardle, 74 U.S. 506 (1868), concluding that these cases "establish the propositions that courts should not lightly presume that a congressional enactment containing general language effects a repeal of a jurisdictional statute and, consequently, that only a plain statement of congr essional intent to remove a particular statutory grant of jurisdiction will suffice." Sandoval, 166 F.3d at 232.

Steele's removal was administered under the permanent provisions of IIRIRA, which differ in some respects from the transitional provisions analyzed in Sandoval. Section 1252 of Title 8 of the United States Code, as amended by IIRIRA, might be construed to divest district courts of jurisdiction to hear habeas corpus petitions where a petitioner has been convicted of an aggravated felony offense. See 8 U.S.C. S 1252(a)(1), (a)(2)(C), (b)(9). We r ecently considered this possibility, however, and, in accordance with our reasoning in Sandoval, determined that IIRIRA's permanent provisions do not preclude district courts from exercising

5

their jurisdiction to hear petitions for habeas corpus following removal orders where the petitioner has been convicted of an aggravated felony. Liang v. INS , 206 F.3d 308 (3d Cir. 2000). The District Court pr operly exercised jurisdiction in accordance with our decision in Liang.

We possess appellate jurisdiction over the District Court's denial of Steele's habeas corpus petition pursuant to 28 U.S.C. SS 1291 and 2253. We review de novo the District Court's denial of habeas corpus relief and its interpretation of the applicable statutes. See Anker Ener gy Corp. v. Consol. Coal Co., 177 F.3d 161, 169 (3d Cir. 1999); DeSousa v. Reno, 190 F.3d 175, 180 (3d Cir. 1999); Yang v. Maugans, 68 F.3d 1540, 1546 (3d Cir . 1995). We review the BIA's interpretation of the statutes which it administers under a more deferential standard. On review, if a statute administered by the INS is ambiguous, and the BIA has provided a reasonable interpretation of its language, we must simply ask whether the BIA's construction is a permissible one. See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 (1984). Where the language of a statute is clear , however, the text of the statute is the end of the matter. See Good Samaritan Hosp. v. Shalala, 508 U.S. 402, 409 (1993).

III.

Before turning to the principal and dispositive issue in this appeal, we must address a threshold issue concerning the relevant sections of the Immigration Act. Steele seeks relief from removal under 8 U.S.C.S 1182(c), 8 U.S.C. S 1182(h), and 8 U.S.C. S 1229b(a). W e conclude that relief under 8 U.S.C. S 1182(c) and 8 U.S.C. S 1182(h) is clearly foreclosed. Only relief under 8 U.S.C.S 1229b(a) is available.

Section 1182(c) of Title 8 provides that waivers of inadmissibility might be granted to certain immigrants who traveled abroad for brief periods of time. Section 1182(c) was repealed by section 309(c) of IIRIRA, ef fective April 1, 1997, but by its terms is still applicable to certain removal proceedings initiated before its ef fective date. IIRIRA S 309(a). Because Steele's removal was initiated after April

6

1, 1997, section 1182(c) is not an available avenue of relief for Steele.

Steele argues that section 1182(c) must r emain available in his case because its unavailability would constitute a retroactive application of the per manent provisions of IIRIRA to a conviction that preceded the Act and this result was not intended by Congress. We find Steele's argument foreclosed by our opinion in DeSousa v. Reno, 190 F.3d 175 (3d Cir. 1999). In DeSousa, the petitioner was a citizen of Portugal who had been a lawful permanent r esident of the United States since 1969. The petitioner had served four and one-half years in prison on an aggravated assault charge. DeSousa claimed that IIRIRA's amendments restricting eligibility for section 1182(c) waivers should not be construed to apply "retroactively" to his case, since his convictions pre-dated IIRIRA. We disagr eed, finding it likely that Congress had intended the amended version of section 1182(c) to apply to convictions preceding the amendment. Id. at 186. Because the issue was not "absolutely clear," however, we proceeded to analyze whether the removal of relief was retroactive in any sense. We concluded, in accordance with our earlier opinion in Scheidemann v. INS, 83 F.3d 1517 (3d Cir. 1996), that because the statute related only to the discretion of the Attorney General to grant a future waiver, its eligibility r estriction had only prospective impact. Id. at 187.

Steele suggests that because his case involved the permanent, rather than the transitional pr ovisions of IIRIRA, he faces a complete removal of waiver rather than an eligibility restriction. Steele argues that this makes his claim of retroactivity more plausible. We disagree. The transitional and permanent provisions of IIRIRA were both passed as part of the 1996 Amendments, and wer e motivated by the same Congressional concer ns. Steele's proffered distinction between the eligibility restrictions under the transitional provisions and the complete repeal under the permanent provisions is a distinction without a difference; in either case, the availability of relief under section 1182(c) is categorically foreclosed. 3

_____

3. We acknowledge that this holding, though mandated by DeSousa, is inconsistent with our sister Court's holding in Tasios v. Reno, 204 F.3d 544, 550–552 (4th Cir. 2000) (holding that the repeal of the 1182(c) waiver under the permanent provisions of IIRIRA has retroactive effects).

Relief under section 1182(h) is also foreclosed in Steele's case. Under 8 U.S.C. S 1182(h) the Attorney General may waive the inadmissibility under 8 U.S.C. S 1182(a)(2)(A)(i)(II) of an alien convicted of a controlled substance offense if that alien's inadmissibility relates to a single offense of simple possession of 30 grams or less of marijuana. Here, Steele has admitted to committing more than one offense for which he could be found inadmissible under 8 U.S.C. S 1182(a)(2)(A)(i)(II). Thus, a waiver under section 1182(h) is unavailable.

Of the three forms of relief sought by Steele, only 8 U.S.C. S 1229b(a) remains viable. That section provides that the Attorney General "may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien-- (1) has been an alien lawfully admitted for permanent residence for not less than 5 years, (2) has resided in the United States continuously for 7 years after having been admitted in any status, and (3) has not been convicted of any aggravated felony." Steele has met the first two criteria required to make him eligible for waiver under 8 U.S.C. S 1229b(a), and insists that he has met the third because he has not been convicted of an aggravated felony. We will now proceed to examine this claim.4

_____

4. Steele is no longer in federal custody, yet he seeks to appeal the denial of his petition for a writ of habeas corpus. Although neither party argues that Steele's appeal is moot, we are required to raise issues of standing sua sponte if such issues exist. See FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 838 (3d Cir . 1996). A section 2241 petitioner must be incarcerated at the time his petition is filed. Though continued custody is normally a requirement for habeas corpus jurisdiction thereafter, there are exceptions to this rule. Where a petition for a writ of habeas corpus is filed and subsequently the petitioner is released from custody, habeas corpus jurisdiction may be sustained where serious collateral consequences flow from the conviction. See Sibron v. New York, 392 U.S. 40, 55-56 (1968); United States v. Romero-Vilca, 850 F.2d 177, 179 (3d Cir . 1988) (finding the possibility of deportation to be a serious collateral consequence of a conviction).

Though the Supreme Court has disapproved of broad presumption of collateral consequences without specific findings of injury-in-fact, see Spencer v. Kemna, 523 U.S. 1, 7-17 (1998), we conclude that Steele has alleged facts sufficient to show a continuing injury and serious collateral

8

IV.

Section 1101(a)(43) of Title 8 defines the term
"aggravated felony" as used in the Immigration Act. It
provides that an aggravated felony is any "illicit trafficking
in a controlled substance (as defined in section 802 of Title
21), including a drug trafficking crime (as defined in section
924(c) of Title 18)." 8 U.S.C. S 1101(a)(43)(B).

Despite the "including" connector, the BIA has
interpreted this definition as encompassing two categories
of felony offenses: those involving "illicit trafficking" in a
controlled substance and those involving "drug trafficking
crime[s]" as defined in S 924(c). An offense falls within the
scope of the first category if 1) the offense constitutes a
felony under the law of the convicting sover eign and 2) the
offense involves "the unlawful trading or dealing of any
controlled substance. . . ." See Matter of Davis, 20 I. & N.
Dec. 536, 541 (BIA 1992). Essential to the concept of

_____

consequences. Erroneous conviction of an aggravated felony will have
several continuing and serious legal consequences for Steele, including
serving as a permanent bar preventing his return to the United States to
visit his family. See 8 U.S.C. S 1182(a)(9)(A) (Supp. II 1996) (imposing a
permanent bar on admissibility for aggravated felons). A determination
that Steele's conviction did not constitute an aggravated felony would
alleviate many of these collateral effects. See generally Bruce Robert
Marley, Exiling the New Felons: The Consequences of the Retroactive
Application of Aggravated Felony Convictions to Lawful Permanent
Residents, 35 San Diego L. Rev. 855 (1998).

Our conclusion here finds support in the decisions of other courts. See
Max-George v. Reno, 205 F.3d 194, 196 (5th Cir. 2000) (presuming
collateral consequences from a determination of inadmissibility); Chavez
v. United States INS, 55 F. Supp. 2d 555, 556-57 (W.D. La. 1999) (finding
collateral consequences following deportation as a matter of law). Cf.
Ramirez v. INS, 86 F. Supp. 2d 301, 303-04 (S.D.N.Y. 1999) (finding that
the appeal of a deported pro se petitioner who could not be contacted
was moot). See generally Gerald L. Newman, Symposium: Jurisdiction
and the Rule of Law after the 1996 Immigration Act , 113 Harv. L. Rev.
1963, 1996-97 (2000) ("[E]xecution of a r emoval order will not ordinarily
moot the case in the Article III sense. For example, extinguishment of a
permanent resident's entitlement to live in the United States normally
results in continuing injury. More generally, the entry of a removal order
creates inadmissibility barriers to futur e visits.")

9

"trading or dealing" is activity of a "business or merchant nature," thus excluding simple possession or transfer without consideration. Id.

Section 924(c)(2) of Title 18 defines "drug trafficking crime" as meaning "any felony punishable under the Controlled Substance Act[,] . . . the Controlled Substance Import and Export Act[s] . . . or the Maritime Drug Law Enforcement Act. . . ." Accordingly, the BIA finds within the second category of aggravated felony convictions any federal conviction for a violation of one of the specified statutes that is a felony conviction under federal law, i.e., a conviction for an offense punishable by imprisonment for over one year. See 18 U.S.C. S 3559. More relevant for present purposes, the BIA understands this second category to encompass convictions for state of fenses, however characterized by the state, if those of fenses would be "punishable" under one of the three specified federal statutes if federally prosecuted, so long as the hypothetical federal conviction would be a felony under federal law, i.e., would be punishable by a term of imprisonment of over one year.

This hypothetical federal conviction approach"require[s] a comparison between the elements of the [state] drug offense and [the elements of] a federal drug provision referenced in 18 U.S.C. S 924(c)(2).. . ." Matter of Davis at 544. Since the basis for the incapacities under the Immigration Act is "convict[ion] of an aggravated felony," 8 U.S.C. S 1229b(a), the Board looks to what the convicting court must necessarily have found to support the conviction and not to other conduct in which the defendant may have engaged in connection with the offense. Thus where, as here, the Service is relying on a state misdemeanor conviction, the requirements of this second category of "aggravated felony convictions" ar e "satisfied [only] by proving a conviction that includes all the elements of [a felony] offense for which an alien`could be convicted and punished' under the cited federal laws." Matter of Barrett at 174. Accordingly, the pr oposed "analogy between state statutes and offenses under the cited federal statutes will . . . be a matter of law." Id. at 177.

10

V.

We find the BIA's interpretation of the statute
troublesome in a number of respects,5 and we specifically
_____

5. Prior to 1990, 8 U.S.C. S 1101(a)(43) defined the term "aggravated
felony" in relevant part as "any drug trafficking crime as defined in
section 924(c)(2) of title 18, United States Code." Under this prior
language, 18 U.S.C. S 924(c)(2) clearly pr ovided the only source for the
definition of "drug trafficking crime."

Section 924(c)(2) of Title 18, which has r emained unchanged during
the relevant period, provides a sentence enhancement in federal
prosecutions for defendants who have used or carried a firearm during
or in relation to the drug trafficking crime that is the subject of the
prosecution. It is in this context that S 924(c)(2) defines "drug
trafficking
crime" as "any felony punishable under" the three specified statutes.
Thus, if one literally substituted the text of S 924(c)(2) for the text
"any
drug trafficking crime (as defined in section 924(c)(2)" in S
1101(a)(43)),
no state offenses were included in the concept of "aggravated felony."

In 1990, Congress decided that this portion ofS 1101(a)(43) should be
changed to make clear that state drug trafficking offenses would be
included. It did so by expanding the definition to encompass "any illicit
trafficking in any controlled substance .. . , including any drug
trafficking crime as defined in section 924(c) of title 18 . . ." and by
expressly stating that the "term [aggravated felony] applies to offenses
described in [paragraph 43] whether in violation of Federal or State law.
. . ." 8 U.S.C. S 1101(a)(43) (1992).

The text of the statute as amended, literally r ead, creates a single
category: state or federal offenses involving"illicit trafficking" (i.e.,
the
marketing of drugs). Felony violation of the thr ee designated federal
statutes are a subset of this single category. Under this literal reading
of
the statute, "aggravated felony" does not include state or federal
offenses
that do not involve the marketing of drugs.

Moreover, in fashioning its hypothetical federal felony approach, the
BIA reads the phrase "felony punishable under" as found in S 924(c)(2)
to mean "offense punishable as a felony under." It is only by so reading
the statute that the BIA is able to find state misdemeanor convictions to
be convictions of aggravated felonies. This r eading is inconsistent with
the reading of a number of Courts of Appeals in what seems to us an
analogous setting. In several cases involving sentencing enhancements,
Courts of Appeals have looked to state law classifications in order to

determine if a given offense constitutes a felony under S 924(c). See
United States v. Ibarra-Galindo, 206 F.3d 1337, 1339-40 (9th Cir. 2000)

11

reserve decision on the validity of its hypothetical felony approach. We may assume its validity for present purposes because we conclude that application of that appr oach to the facts of this case does not support the Service's position.

One cannot suffer the disabilities associated with having been convicted of an aggravated felony unless one has been convicted of a felony. This, of course, means that there must be a judicial determination beyond a r easonable doubt of every element of a felony or a constitutionally valid plea that encompasses each of those elements. As we have explained, it is the BIA's understanding that these determinations do not have to come in a pr oceeding on a felony indictment if they are sufficient to satisfy the elements of a hypothetical felony offense under the Controlled Substances Act, i.e., an offense punishable under that act by imprisonment for more than one year.

The fact that this hypothetical offense appr oach imposes such grave consequences on factual determinations made, or pleas entered, in misdemeanor proceedings is one of its more troubling aspects. Misdemeanor char ges are frequently not addressed by a defendant with the same care and caution as a felony indictment with its mor e serious, immediate consequences. This concern counsels, at a minimum, that we insist on sufficient formality in the misdemeanor proceeding to assure that each and every element of the hypothetical federal felony is focused on and specifically addressed in that proceeding.

All of the state criminal proceedings against Steele were misdemeanor proceedings. Moreover, none of those proceedings involved findings or a plea satisfying the elements of an offense under the Contr olled Substances Act punishable by imprisonment for more than a year . As the District Court correctly determined, the elements of the

_____

(collecting cases). This is plainly inconsistent with the BIA's current jurisprudence in the deportation context, whichfinds state law consequences irrelevant. See In re K–V–D–, Int. Dec. 3422, 1999 WL 1186808 (BIA 1999) (en banc) (Filppu, Board Member, dissenting) (criticizing the BIA's current interpretation for this reason).

misdemeanor offense of "Criminal Sale of Marijuana" are met if the defendant has distributed 30 grams or less of marijuana without remuneration. Looking to federal law, the District Court also correctly concluded that "distributing a small amount of marijuana for no remuneration" is treated as simple possession under 21 U.S.C. S 844 and is punishable by a maximum term of one year. See 21 U.S.C. S 841(b)(4). Based on these two conclusions, the hypothetical felony approach should have led the District Court to hold that Steele has not been convicted of an aggravated felony within the meaning of the Act.

The District Court reached its contrary conclusion only by relying on a fact that was not focused on and specifically addressed in any of the state proceedings. It reasoned as follows:

> [Section 844 provides that] any person who violates this subsection may be sentenced to a term of imprisonment of not more than 1 year, and shall be fined a minimum of $1,000, or both, except that if he commits such offense after a prior conviction under this title or title III, or a prior conviction for any drug, narcotic, or chemical offense char geable under the law of any State, has become final, he shall be sentenced to a term of imprisonment for not less than 15 days but not more than 2 years. . . .

The District Court thus concluded that Steele's second misdemeanor conviction was for an offense punishable as a felony under the Controlled Substances Act.

As the above observations of the District Court make clear, the distribution of 30 grams or less of marijuana without remuneration is not inherently a felony under federal law. If a United States Attorney wants a felony conviction, he or she must file an information under 21 U.S.C. S 851 alleging, and subsequently pr ove, that the defendant has been previously convicted of a drug offense at the time of the offense being prosecuted. While the status of being "a one time loser" is not technically an element of the offense proscribed byS 844, we agree with the District Court that it can be treated as such. Since

13

distribution of marijuana without remuneration is not inherently a felony, it seems to us that the only alternative to so regarding it consistent with the rule of lenity would be to treat any S 844 offense in this context as a misdemeanor.

The problem with the District Court's approach is not that it treated the status of being a "one time loser" as an element of the hypothetical federal felony. Rather, the problem is that Steele's "one time loser" status was never litigated as a part of a criminal proceeding. That status was not an element of the crime charged in the second misdemeanor proceeding against him. As a result, the record evidences no judicial determination that that status existed at the relevant time. For all that the record before the immigration judge reveals, the initial conviction may have been constitutionally impaired. Even assuming that Steele was prudent enough to insist on counsel in the second misdemeanor proceeding and even assuming counsel was perspicacious enough to focus on the potential immigration consequences, the record simply does not demonstrate that the prior conviction was at issue.

The Service understandably stresses that Steele admitted to the immigration judge that there were three outstanding state misdemeanor convictions. It suggests that on this basis the immigration judge was entitled to conclude that Steele was a "one time loser" when he committed his second offense. Congress, however, has not left it up to the immigration judge to determine whether Steele committed a felony. As we stated at the outset of this portion of our analysis, the aggravated felony disability under the Act applies only if there has been a conviction of a felony. It is one thing to accept, as we do arguendo, that the conviction may be of a hypothetical felony conviction; it would be entirely another simply to ignore the requirement that there be a conviction.

VI.

Because we conclude that Steele has not been convicted of an aggravated felony, hypothetical or otherwise, we will reverse the judgment of the District Court and remand with instructions to return this matter to the agency so that

14

Steele may submit an application for cancellation of removal in accordance with 8 U.S.C. S 1229b(a).

A True Copy:
Teste:

　　　Clerk of the United States Court of Appeals
　　　for the Third Circuit

15