

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-6-2004

# Mohamed v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1539

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Mohamed v. Atty Gen USA" (2004). *2004 Decisions.* Paper 872.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/872

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 03-1539

ASHRAF ALI MOHAMED,

Petitioner

v.

JOHN ASHCROFT,
Attorney General of the United States,

Respondent

_____

On petition for review of a final order
of the Board of Immigration Appeals
File No: A72-001-538
_____

Submitted pursuant to Third Circuit LAR 34.1(a)
on March 23, 2004

Before: FUENTES, SMITH, and GIBSON, *Circuit Judges,*[*]

(Filed:  April 6, 2004)

_____

OPINION OF THE COURT
_____

[*] The Honorable John R. Gibson, Senior Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

SMITH, *Circuit Judge.*

Petitioner Ashraf Ali Mohamed appeals the order of the Board of Immigration Appeals denying his petition for relief from removal. Mohamed claims that the Immigration Judge ("IJ") deprived him of his right to due process of law by pre-judging his testimony to be false. We find no merit to this claim and therefore affirm the decision of the Board of Immigration Appeals ("BIA").

I.

Mohamed is an Egyptian national who entered this country as a visitor for pleasure on June 14, 1991, with authorization to stay until December 14, 1991. After arriving in the United States, Mohamed was informed by a man named Mohamed Al Said that he could apply for a green card prior to his visa expiring. To that end, Mohamed accompanied Al Said and five other individuals on a trip from Jersey City, New Jersey to Miami, Florida after paying Al Said $3,500. Once in Miami, Mohamed went to a hotel and met an individual named Ali. Ali took Mohamed and the other men to another location to obtain photographs. The next day, the men went to the Immigration and Naturalization Service ("INS") Office in Miami where Ali was present. Ali gave Mohamed a completed application for a work authorization permit and had his fingerprints taken. Mohamed returned to his hotel, where Ali arrived shortly thereafter with a work authorization card. Mohamed then returned to Jersey City. On December 2, 1991, Mohamed applied for a renewal of his work authorization card. During the

2

processing of this renewal application, the INS determined that the work authorization card was fraudulent.

In September of 1997, Mohamed married a United States citizen, Denise L. Harrazari. On February 8, 1999, the INS issued a Notice to Appear, charging Mohamed with being removable, for overstaying his non-immigrant visa. Mohamed conceded removability before the IJ, but requested relief from removal on two grounds: (1) a waiver of document fraud pursuant to Section 212(i) of the Immigration and Nationality Act, and (2) adjustment of status to lawful permanent resident status.

In the removal proceedings, Mohamed asserted that he did not know that his initial work authorization was fraudulent. As the IJ was reviewing Mohamed's affidavit during the removal proceedings, the IJ stated:

> I think if I were a stranger in the United States and didn't know the laws, if I lived in Jersey City and I had to fly to Miami to get a work authorization card and a passport and then was flown back to Jersey City and had to pay $3,500 for it, I think I would believe that something was amiss and this was not [a] particularly legal endeavor that I was engaging in.

The IJ explained to Mohamed's counsel

> Now, based on what I have read in his affidavit . . . it is not plausible to the court that an individual in order to obtain work authorization would pay $3,500, would get together with unknown people, fly from, travel from Jersey City to [LaGuardia] Airport, fly from [LaGuardia] Airport to Miami, be put in a motel, have the application for the work authorization completed by another individual, never see that application, apparently, stay at Immigration while this individual disappeared and shows up a couple [of] hours later with all the documentation. I think a reasonable man or woman would be suspicious of that activity would have a reasonable doubt that what you had done was illegal.

3

However, the IJ explained that he was inclined to waive the fraud involved in obtaining the work authorization. When Mohamed expressed his desire to testify about the work authorization, the IJ issued this warning to Mohamed's counsel: "what you don't want to do is have [Mohamed] falsely testify today because while I would waive the fraud that was involved in obtaining the work authorization, if I determine that the respondent is lying to me today under oath, I will send him back very quickly."

Mohamed's testimony before the IJ was virtually identical to the affidavit which was already before the IJ, including his repeated assertions that he was unaware at the time that his manner of obtaining a work authorization card was fraudulent. He also explained that, subsequent to gaining what he believed to be a permanent resident visa, he lost that card. After contacting his father-in-law, who was employed by the United Nations, Mohamed's father-in-law explained that the document had not been a permanent resident visa, but a work authorization card. Mohamed testified that his father-in-law then checked with the INS based on Mohamed's alien number, determined that Mohamed had never been issued a work authorization card, and informed Mohamed of this fact. In January, 1992, however, Mohamed was arrested at the INS office in Philadelphia when he tried to gain a replacement work authorization card.

The IJ concluded that Mohamed lied under oath, explaining that "[r]espondent's explanation is preposterous. The entire explanation is preposterous. I warned the respondent [what] would happen if I find that he is lying to me. The court is severely

4

tempted to end this case right here and now and order the respondent deported . . . ." The IJ instructed Mohamed's counsel that, although the respondent committed fraud against the INS and the court, he would consider whether extreme hardship would occur if Mohamed was deported. After hearing testimony from Mohamed's wife, the IJ concluded that no such extreme hardship would occur. He denied Mohamed's petition for waiver of fraud and petition for adjustment of status. The BIA affirmed the IJ's decision without opinion on January 27, 2003. This timely appeal followed.

## II.

The IJ had jurisdiction pursuant to 8 C.F.R. § 208.2(b) (2002). The BIA had appellate jurisdiction pursuant to 8 C.F.R. § 1003.1(b). We exercise appellate jurisdiction over the BIA's order pursuant to § 242(b) of the Immigration and Nationality Act. 8 U.S.C. § 1252(b); *see also Abdulai v. Ashcroft*, 239 F.3d 542, 548-49 (3d Cir. 2001).[1] When the BIA defers to the IJ, however, we "must review the decision of the IJ." *Gao v. INS*, 299 F.3d 266, 271 (3d Cir. 2002) (citing *Abdulai*, 239 F.3d at 549 n.2). Where the petitioner alleges a due process violation, we review the IJ's decision *de novo*.

_____

[1] Mohamed's removal to Egypt prior to our decision did not oust this court of jurisdiction. The section which previously governed our review, 8 U.S.C. § 1105a(c), which was repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 11 Stat. 1570 ("IIRIRA"), precluded review of matters where the alien had been removed. *See Newton v. INS*, 622 F.2d 1193, 1195 (3d Cir. 1980). The provision which governs our jurisdiction subsequent to the IIRIRA, 8 U.S.C. § 1252 contains no such prohibition. Nor do we find Mohamed's claims to be moot, because if his removal is affirmed, Mohamed is ineligible to return to the United States for a period of five years. 8 U.S.C. § 1182(a)(9)(A)(1); *see also Steele v. Blackman*, 236 F.3d 130, 134 n.4 (3d Cir. 2001).

*Abdulrahman v. Ashcroft*, 330 F.3d 587, 595-96 (3d Cir. 2003).

It is well established that "[d]espite the fact that there is no constitutional right to asylum, aliens facing removal are entitled to due process." *Id*. at 596 (citing *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001)). However, IJs are given broad discretion in their ability to conduct trial proceedings. *See Aguilar-Solis v. INS*, 168 F.3d 565, 569 (1st Cir. 1999) ("[A] party to an immigration case, like any other litigant, is entitled to a full and fair hearing–not an idyllic one.").

In cases such as this one, where the petitioner's fate relies heavily on his own testimony, we afford great deference to the IJ's assessment of credibility. *Dia v. Ashcroft*, 353 F.3d 228 (3d Cir. 2003) (en banc). However, an IJ may not make that credibility finding prior to hearing the evidence. He may not pre-judge the applicant's testimony. We find no evidence, however, that the IJ assessed Mohamed's credibility prior to Mohamed's testimony. Based on the affidavit already in front of him, which detailed how Mohamed claimed to have obtained a work authorization card, the IJ simply expressed doubt that any reasonable person would believe that method of gaining a work authorization card was not fraudulent. On the affidavit alone, however, the IJ explained that he was inclined to grant, rather than deny, Mohamed's petition. When Mohamed expressed his desire to testify, the IJ warned Mohamed that, although he was inclined to allow a waiver of past fraud, the same lenience would not be given to fraud before the court. An IJ is entitled to warn the petitioner as to the consequences of providing false

6

testimony to the court. Nothing in the record supports Mohamed's assertion that the IJ concluded that Mohamed was a liar before he took the stand.

Further, there is no evidence in the record that the IJ did not allow Mohamed to testify fully and give his explanation for the fraudulent documents. It was only after Mohamed testified that the IJ determined that Mohamed had not been truthful and lied under oath. This is precisely what the IJ is required to do–to make credibility determinations. To the extent that the IJ's determination as to Mohamed's credibility correlated with his earlier disbelief of Mohamed's affidavit, this was only possible because Mohamed's testimony in no way differed from the affidavit. As we have explained before, "[i]mpartiality is not gullibility. . . . If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions." *Abdulrahman*, 330 F.3d at 596 (citing *In re J.P. Linahan, Inc.*, 138 F.2d 650, 654 (2nd Cir. 1943)). A determination by the IJ that a petitioner has testified falsely is not improper, and therefore is not a violation of Mohamed's due process rights. We will therefore affirm.