OPINION
PER CURIAM.
Dexter Scotland, a citizen of Antigua, petitions for review of a final expedited removal order issued by the Department of Homeland Security (“DHS”). For the following reasons, we will deny the petition.
Scotland entered the United States as a non-immigrant on November 18, 1976, when he was less than a year old. In April 2000, Scotland pleaded guilty to attempted criminal sale of a controlled substance in violation of New York Penal Law § 220.39 in the Supreme Court of New York, Bronx County. The court sentenced Scotland to 6 months’ imprisonment and 5 years of probation. (Administrative Record at 22.) In March 2003, the same court convicted Scotland of the same charge and sentenced him to one year of imprisonment. (Id.)
Scotland came to the attention of the Bureau of Immigration and Customs Enforcement (BICE) in May 2008 when he was arrested in Monroe County, Pennsylvania. David Cuffee, a BICE Immigration Enforcement Agent, interviewed Scotland, who, according to Cuffee, confirmed that he was born in Antigua and was not a United States citizen. Scotland’s father, with whom Cuffee spoke over the telephone, confirmed that he unsuccessfully tried to obtain citizenship for his son. Finally, Cuffee noted that Scotland had no fear of returning to Antigua and that he never served in the United States military. (Id. at 8.) The administrative record also contains a sworn statement, which Scotland signed, affirming that he was born in Antigua and that he is not a United States citizen. (Id. at 9.)
On May 14, 2008, David Clark, a Supervisory Detention and Deportation Officer with BICE, sent Scotland a “Notice of Intent to Issue a Final Administrative Removal Order.” The notice informed Scotland that DHS determined that he was amenable to administrative removal proceedings based on his non-citizenship and his 2003 conviction for criminal sale of a controlled substance. Scotland signed the certificate of service and marked boxes on the form indicating that he wished to contest his removal, that he is both a citizen of the United States and a lawful permanent resident, and that he intended to request withholding of removal to Antigua because he feared persecution based on a protected ground. (Id. at 3-4.)
A memorandum dated June 3, 2008, initialed by Clark, forwarded Scotland’s case to Scott Blake, the Assistant Field Office Director in the Allenwood, Pennsylvania BICE office. Clark informed Blake that Scotland submitted letters written on his behalf stating that he wished to remain in the country to support his United States citizen wife and her four children and that he feared returning to Antigua since most of his family resides in the United States. (Id. at 11.) On June 10, 2008, Blake issued a final administrative order of removal finding that the record established by clear and convincing evidence that Scotland is not a United States citizen and that he is deportable as an alien convicted of an aggravated felony. (Id. at 2.) Blake also found that Scotland is not eligible for any discretionary relief from removal. (Id.) Scotland filed a timely petition for review *853 from that order.[1]
We have jurisdiction to review the expedited removal order under 8 U.S.C. § 1252(a). “Because the basis for removal is [Scotland’s] conviction for an aggravated felony, our jurisdiction is limited under the REAL ID Act to ‘constitutional claims or questions of law.’ ” Pierre v. Att’y Gen., 528 F.3d 180, 184 (3d Cir.2008) (en banc).
DHS entered Scotland’s order of removal pursuant to an expedited removal proceeding. Such proceedings are permitted for the removal of an alien who has committed an aggravated felony and who is not a legal permanent resident. See 8 U.S.C. § 1228(b)(1). In contrast to the standard removal proceedings, the alien has no right to appear before an immigration judge and no right to any discretionary relief. See 8 U.S.C. § 1228(b)(5); Gonzalez v. Chertoff, 454 F.3d 813, 815 (8th Cir.2006). Scotland argues that he obtained derivative citizenship through his father in 1992 and therefore DHS lacked “jurisdiction” over his ease. (Petitioner’s Br. at 11.) Scotland, however, had thirteen days to rebut the DHS’s citizenship determination, a finding based, in part, on his sworn statement to Cuffee. Scotland did not provide any evidence that he obtained United States citizenship and, therefore, DHS properly proceeded under 8 U.S.C. § 1228(b).
Scotland also contends that DHS violated his due process rights during his expedited hearing by failing to provide him with adequate notice and an opportunity to respond to the DHS’s findings. Under the regulations governing expedited removal of aggravated felons, DHS is required to provide a Notice of Intent which sets forth the agency’s preliminary determinations and give the alien time to respond. 8 C.F.R. § 1238.1(b)(2). Here, DHS served the Notice of Intent on May 14, 2008, and Scotland had thirteen calendar days to submit a response to the agency’s allegations of facts and conclusions of law.[2] Scotland took advantage of the response period to submit letters from himself, his father, and from his wife asking that he be allowed to remain in the United States. Clark summarized these letters in a memorandum to Blake, the Deciding Service Officer, who issued a final administrative order of removal 27 days after Scotland received the Notice of Intent.
Scotland’s counsel now alleges that she attempted to contact Clark by telephone before the expiration of the response period. (Petitioner’s Br. at 9.) Even if counsel could prove that she called Clark within the thirteen day response period, such contact would have been improper as the regulations, and the Notice of Intent itself, call for written responses and submissions.[3] 8 C.F.R. § 1238.1(c)(1). The only *854 evidence of written contact between counsel and BICE is counsel’s July 1, 2008 letter which was sent after the expiration of the response period and after DHS issued the final order of removal. Therefore, because DHS complied with the applicable regulations and provided Scotland with a full and fair hearing and a reasonable opportunity to present evidence, we find no due process violation. See Romanishyn v. Att’y Gen., 455 F.3d 175, 185 (3d Cir.2006) (citations omitted).
Finally, Scotland asserts that DHS erroneously determined that he was convicted of an aggravated felony. A state drug conviction, such as Scotland’s New York conviction, constitutes an aggravated felony if the offense of conviction is analogous to a felony under the federal Controlled Substances Act (“CSA”). See Evanson v. Att’y Gen., 550 F.3d 284, 289 (3d Cir.2008) (describing hypothetical federal felony rule). Under N.Y. Penal Law § 220.39, “[a] person is guilty of criminal sale of a controlled substance in the third degree when he knowingly and unlawfully sells a narcotic drug.” In comparison, the CSA makes it unlawful to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense a controlled substance. 21 U.S.C. § 841(a)(1). While it is unclear which controlled substance Scotland sold, all of the substances criminalized by the New York statute are included in the CSA. Compare N.Y. Penal Law § 220.39 with 21 U.S.C. §§ 802(6) and 812(c).
Scotland points to our decision in Steele v. Blackman, 236 F.3d 130 (3d Cir.2001), for the proposition that use of the word “sale” in the New York Penal code does not establish that the offense involved trading and dealing. (Petitioner’s Br. at 12.) Steele is inapposite. In that case, we held that a New York state misdemeanor conviction for the sale of 30 grams or less of marijuana would not constitute a hypothetical federal felony under the CSA. Scotland, however, was not convicted for the sale of marijuana, which is punishable in New York under a separate statute. See N.Y. Penal Law § 221.40. Therefore, because we find that a conviction under § 220.39 is analogous to an offense under the CSA, we reject his argument that his conviction does not constitute an aggravated felony.
For these reasons we will deny Scotland’s petition for review.

. While Blake issued the order on June 10, 2008, DHS did not notify Scotland of the order until June 28, 2008. Therefore, his July 14, 2008 petition was timely.

. The regulations allow for ten calendar days if service of process is effectuated in person; however, if service is by mail, Scotland would have had thirteen calendar days to respond to the Notice of Intent. 8 C.F.R. § 1238.1 (b)(2)(i). Inasmuch as the Notice of Intent does not indicate whether it was served by mail, we will give Scotland the benefit of the thirteen day rule.

. Counsel asserts that she attempted to contact Clark because an alleged source at BICE informed her that Scotland's removal was no longer being processed through expedited removal proceedings. (Petitioner's Br. at 9.) According to counsel, the agency’s failure to clarify the accuracy of this information violates due process. (Id., at 10.) We do not think that alleged reliance on misleading information from an agency source who was seemingly not involved in Scotland's removal proceedings can give rise to a due process right.