

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-5-2001

# Chong v. Dist Dir INS NJ

Precedential or Non-Precedential:

Docket 00-1428

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Chong v. Dist Dir INS NJ" (2001). *2001 Decisions.* Paper 203.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/203

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 5, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-1428

LEE MOI CHONG,

      Appellant

v.

DISTRICT DIRECTOR, IMMIGRATION & NATURALIZATION
SERVICE, ANDREA QUARANTILLO

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 99-cv-03466)
District Judge: William G. Bassler

Argued: December 1, 2000

Before: BECKER, Chief Judge, RENDELL, and
MAGILL,* Circuit Judges

(Opinion Filed: September 5, 2001)

Stanley H. Wallenstein, Esq.
 (Argued)
41-43 Beekman Street
3rd Floor
New York, NY 10038
Counsel for Appellant

_____

* Honorable Frank Magill, Senior United States Circuit Judge for the
Eighth Circuit Court of Appeals, sitting by designation.

John M. McAdams, Jr., Esq.
 (Argued)
David W. Ogden,
 Assistant Attorney General
Terri Jane Scadron,
 Senior Litigation Counsel
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Counsel for Appellee

OPINION OF THE COURT

MAGILL, Senior Circuit Judge.

Lee Moi Chong appeals the District Court's denial of her habeas petition seeking relief from a final order of removal by the Board of Immigration Appeals (the "Board"). Chong argues that the Board violated her due process rights, the Immigration and Nationality Act (the "INA"), and Immigration and Naturalization Service (the "INS") regulations in determining that she is ineligible for withholding of removal. We affirm.

I.

Chong, a Malaysian citizen, became a permanent resident of the United States in 1991. In May 1997, a federal district court convicted Chong of conspiracy to distribute heroin and possession of heroin with intent to distribute, in violation of 21 U.S.C. SS 846 and 841(b). The district court sentenced Chong to time served, which amounted to two years imprisonment. The court departed downward from the minimum seventy-month sentence due to Chong's cooperation with the government.

Based on Chong's drug convictions, the INS commenced removal proceedings. The INS claimed that it could remove Chong because her convictions constituted aggravated felonies and related to a controlled substance. See 8 U.S.C.

2

S 1227(a)(2)(A)(iii) (2000); id. atS 1227(a)(2)(B)(i). In August 1998, Chong conceded removeability and an immigration judge (the "IJ") ordered Chong deported to Malaysia.

Chong subsequently filed a motion with the IJ requesting a hearing to determine her eligibility for withholding of removal. The INA provides that "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. S 1231(b)(3)(A) (2000). Chong claimed that the Malaysian government would prosecute her for her American drug convictions because she is ethnic Chinese. The government argued that Chong was ineligible for withholding of removal because her drug convictions constitute a "particularly serious crime." Id. at S 1231(b)(3)(B)(ii). An exception to S 1231(b)(3)(A) applies if

> the alien, having been convicted by a final judgment of a particularly serious crime[,] is a danger to the community of the United States. . . . [A]n alien who has been convicted of an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least five years shall be considered to have committed a particularly serious crime. The previous sentence shall not preclude the Attorney General from determining that, notwithstanding the length of the sentence imposed, an alien has been convicted of a particularly serious crime.

Id. at S 1231(b)(3)(B).

After granting Chong a stay of removal, the IJ denied Chong an individualized hearing, reasoning that her drug convictions constitute per se "particularly serious crimes." The IJ certified his decision to the Board. Subsequently, the Board issued two opinions that hold that determining whether an alien convicted of an aggravated felony and sentenced to less than five years imprisonment has been convicted of a "particularly serious crime" requires an individualized examination of the nature of the conviction, the sentence imposed, and the circumstances and

3

underlying facts of the conviction. In re L-S-, Interim Decision 3386, 1999 WL 219344 (BIA Apr. 16, 1999); In re S-S-, Interim Decision 3374, 1999 WL 38822 (BIA Jan. 21, 1999). Interpreting the Board's opinions to require an individualized hearing, the IJ sent a letter to the Board requesting it to remand Chong's case for a hearing. Chong also requested that the Board remand her case to the IJ so the IJ could make an individualized examination of her conviction.

On July 12, 1998, the Board modified, but affirmed, the IJ's decision. The Board held that Chong was ineligible for withholding of removal because she had committed a "particularly serious crime." The Board noted that although Chong's two-year sentence is below the five-year term that the INA requires to be considered a per se "particularly serious crime," the district court departed from the minimum sentence due to Chong's assistance to the government. The Board stated: "This is different from a sentence reduction due to a minor role in the offense or other mitigating factors." The Board also examined the complaint against Chong and asserted that "over several years, [Chong] handled money derived from selling drugs and arranged telephonic connections for people involved in the conspiracy to promote the distribution of large amounts of heroin." Alternatively, the Board held that Chong failed to show that a return to Malaysia would threaten her freedom due to her Chinese ethnicity.

Chong then filed a habeas petition in the District Court under 28 U.S.C. S 2241, arguing that the Board violated her due process rights and erred in determining that she was ineligible for withholding of removal. On September 3, 1999, while Chong's habeas petition was pending in the District Court, the INS deported her to Malaysia. The District Court denied Chong's petition on February 29, 2000. The District Court held that neither due process nor the INA required the Board to provide Chong with an individualized hearing to determine whether she committed a "particularly serious crime." The District Court also held that the Board did not violate Chong's due process rights because the Board: (1) provided Chong with adequate notice; (2) did not deprive Chong of an opportunity to be

4

heard; and (3) based its decision on a permissible interpretation of the INA under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984).1 Chong appeals, claiming that the Board violated (1) her due process rights, (2) the INA, and (3) INS regulations.

II.

A. Jurisdiction

We initially must examine a number of jurisdictional issues to determine whether we can entertain Chong's appeal. First, the Supreme Court recently resolved a circuit split by holding that neither the Antiterrorism and Effective Death Penalty Act of 1996 nor the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 repeal district courts' jurisdiction to review aliens' habeas petitions filed under 28 U.S.C. S 2241(c). INS v. St. Cyr, 121 S. Ct. 2271, 2287 (2001); accord Liang v. INS, 206 F.3d 308, 317 (3d Cir. 2000). Second, S 2241(c)'s admonition that "habeas corpus shall not extend to a prisoner unless" the prisoner is "in custody" does not deprive us of jurisdiction to review Chong's petition. 28 U.S.C. S 2241(c) (2000). Chong filed her habeas petition on July 22, 1999. On September 3, 1999, while Chong's petition was pending in the District Court, the INS deported her to Malaysia. The District Court denied Chong's petition on February 29, 2000. We hold that Chong is "in custody" within the meaning of S 2241(c) notwithstanding her removal, because we measure custody at the time Chong filed her petition. See Carafas v. LaVallee, 391 U.S. 234, 238 (1968); United States ex rel. Wojtycha v. Hopkins, 517 F.2d 420, 423 n.6 (3d Cir. 1975) ("The `in-custody' jurisdictional requirement is determined as of the date the petition is filed in the district court.").

_____

1. The District Court denied Chong's petition on the additional ground that "she waived a deportation proceeding as part of her plea bargain." Apparently, the District Court learned of this purported waiver from the government's pre-sentence report. The pre-sentence report is not part of the record, and the government seems to discount reliance upon it as a means of affirming the District Court. Since we find other grounds sufficient to uphold the District Court's decision, we need not investigate the alleged waiver.

5

Finally, we must determine whether an Article III,S 2 case or controversy continues to exist despite Chong's deportation. Regardless of whether an Article III,S 2 case existed during the District Court proceedings, Chong must show the subsistence of a case or controversy in this Court. See Lewis v. Continental Bank Corp., 494 U.S. 472, 477–78 (1990). Although the parties did not raise the case or controversy issue in their original briefs, we must resolve the issue because it implicates our jurisdiction. See St. Paul Fire & Marine Ins. Co. v. Barry, 438 U.S. 531, 537 (1978); Rogin v. Bensalem Township, 616 F.2d 680, 684 (3d Cir. 1980) ("Inasmuch as mootness would divest us of jurisdiction to consider this appeal, we are obligated to address this issue as a threshold matter.") (footnote omitted).

We acknowledge that we previously have suggested that it is within our discretion to consider a mootness question not raised by the parties. See, e.g., Jersey Cent. Power & Light Co. v. Lacey, 772 F.2d 1103, 1107 n.8 (3d Cir. 1985) ("As mootness is a jurisdictional question, we may consider it sua sponte.") (emphasis added). However, the Supreme Court has held that courts must decide Article III standing issues, even when not raised by the parties, before turning to the merits. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 90 (1998) (stating that " `a court is bound to ask and answer [a jurisdictional question] for itself, even when not otherwise suggested' ") (citation omitted); see also Steele v. Blackman, 236 F.3d 130, 134 n.4 (3d Cir. 2001) ("Although neither party argues that Steele's appeal is moot, we are required to raise issues of standing sua sponte if such issues exist."). Therefore, we proceed to examine whether Chong's deportation renders her appeal moot.

Initially, we must address Chong's argument that we should entertain her appeal because we previously maintained jurisdiction over a deportee's habeas petition in Marrero v. INS, 990 F.2d 772 (3d Cir. 1993). In Marrero, this Court held that it would have jurisdiction to review a deportation order after the alien has been deported if the record revealed a colorable due process claim, despite the since repealed 8 U.S.C. S 1105a(c). Id.  at 777. However,

6

Marrero did not address whether an Article III case or controversy continued to exist after the alien's deportation. The Supreme Court has cautioned that "drive-by jurisdictional rulings of this sort . . . have no precedential effect." Steel, 523 U.S. at 91. Thus, we think our inquiry must extend beyond Marrero.

Under Article III, S 2 of the United States Constitution, the exercise of judicial power depends upon the existence of a case or controversy. DeFunis v. Odegaard, 416 U.S. 312, 316 (1974). In this case, Chong must show that her petition is not moot despite her deportation. Put another way, Chong must show that the standing she apparently had when she filed her habeas petition continues to exist now. See United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980) (explaining that "mootness [is] the `doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).' ") (quoting Henry Monaghan, Constitutional Adjudication: The Who and When, 82 Yale L.J. 1363, 1384 (1973)). Thus, Chong must show that she has suffered, or is threatened with, an actual injury traceable to the INS that is likely to be redressed by a favorable decision. See Lewis, 494 U.S. at 477.

Even when a litigant is unable to meet the requirements of the general mootness inquiry, the litigant may invoke an exception to the mootness doctrine to gain judicial review. There are four exceptions to the mootness doctrine, so that a court will not dismiss a case as moot if: (1) secondary or "collateral" injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit. Artway v. Attorney Gen. of N.J., 81 F.3d 1235, 1246 n.6 (3d Cir. 1996). In this case, Chong contends that her petition presents a live case or controversy under the general mootness inquiry. Alternatively, Chong argues that sufficient collateral consequences flow from the Board's order of removal so that even though the INS already has deported her, we may entertain her appeal.

7

The Supreme Court has explained that "an incarcerated convict's (or a parolee's) challenge to the validity of his conviction always satisfies the case-or-controversy requirement, because the incarceration (or the restriction imposed by the terms of the parole) constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction." Spencer v. Kemna, 523 U.S. 1, 7 (1998). However, after the convict's sentence expires, "some concrete and continuing injury other than the now-ended incarceration or parole--some `collateral consequence' of the conviction--must exist if the suit is to be maintained." Id.

In Spencer, the Supreme Court held that insufficient collateral consequences resulted from the petitioner's parole revocation to avoid mootness. Id. at 14-17. In so holding, the Court criticized precedent that presumed the existence of collateral consequences and that accepted "the most generalized and hypothetical of consequences as sufficient to avoid mootness." Id. at 10. In particular, the Court criticized its decision in Sibron v. New York , 392 U.S. 40 (1968), where the Court held that the "mere `possibility' " of adverse collateral consequences is sufficient to preclude a finding of mootness. Id. at 55 (citation omitted). Nevertheless, the Spencer Court did not overrule Sibron, instead distinguishing it by noting that although a court may presume collateral consequences in the context of a criminal conviction, the same cannot be said of parole revocation. 523 U.S. at 12.

This Court interpreted Spencer's collateral consequences analysis in Steele v. Blackman, where the INS deported the petitioner after he filed a habeas petition seeking reversal of the Board's determination that his drug convictions amounted to an aggravated felony. 236 F.3d at 132. In holding that the petitioner "alleged facts sufficient to show a continuing injury and serious collateral consequences," we stated:

> Erroneous conviction of an aggravated felony will have several continuing and serious legal consequences for [the petitioner], including serving as a permanent bar preventing his return to the United States to visit his family. See 8 U.S.C. S 1182(a)(9)(A) (Supp. II 1996)

8

> (imposing a permanent bar on admissibility for
> aggravated felons). A determination that [the
> petitioner's] conviction did not constitute an aggravated
> felony would alleviate many of these collateral effects.

Id. at 134 n.4.

We hold that sufficient collateral consequences flow from the Board's order of removal to make Chong's appeal a live case or controversy under Article III, S 2. Spencer rejects Chong's claim that the Board's order of removal creates sufficient collateral consequences by rendering her ineligible to return to the United States due to possible prosecution for felonious entry since Chong is " `able--and indeed required by law--to prevent such a possibility from occurring.' " Spencer, 523 U.S. at 15 (quoting Lane v. Williams, 455 U.S. 624, 633 n.13 (1982)). However, the INA provides, in relevant part, that an alien who has been ordered removed "and who seeks admission within 10 years of the date of such alien's departure or removal . .. is inadmissible." 8 U.S.C. S 1182(a)(9)(A)(ii) (2000). Thus, the Board's order of removal creates sufficient collateral consequences to render Chong's petition a live case or controversy by preventing her from entering the United States for ten years. See Tapia Garcia v. INS , 237 F.3d 1216, 1218 (10th Cir. 2001) (holding that the deportee's "inability to reenter and reside legally in the United States with his family is a collateral consequence of his deportation because it is clearly imposed as a matter of law"); Max-George v. Reno, 205 F.3d 194, 196 (5th Cir. 2000), vacated on other grounds, 121 S. Ct. 2585 (2001) (holding that the alien's deportation did not render his habeas petition moot because "he cannot be admitted into the United States within ten years of the date of his removal"). But see United States v. Mercurris , 192 F.3d 290, 294 (2d Cir. 1999) (holding moot the deportee's habeas petition challenging the district court's finding that his marijuana convictions rendered him an aggravated felon since the deportee's controlled substance conviction prohibited him from entering the United States in the following ten years, regardless of his alleged status as an aggravated felon); Diaz v. Duckworth, 143 F.3d 345, 346-48 (7th Cir. 1998) (holding that the petitioner's deportation

9

mooted his habeas petition seeking reinstatement of"good-time" credit and stating, in dicta, that "[w]hatever is left of Sibron is too little for a deportee to invoke, even if the deportee is complaining about a conviction, and not a parole revocation, like Spencer, or a prison disciplinary sanction, like Diaz"); cf. Hose v. INS, 180 F.3d 992, 996 (9th Cir. 1999) (en banc) (holding that the deportation of the alien rendered her habeas petition seeking a stay of deportation moot).

We recognize that Steele does not necessarily compel our holding because of the different factual scenarios presented. In Steele, the petitioner challenged the Board's determination that he committed an aggravated felony. 136 F.3d at 132. The INA bars aggravated felons from entering the United States for ten years. 8 U.S.C. S 1182(a)(9)(A)(ii). Thus, a determination that the Steele petitioner's conviction did not constitute an aggravated felony could allow the petitioner to reenter the United States.

By contrast, Chong does not contest the Board's finding that she committed an aggravated felony. Therefore, the Board's unchallenged finding that Chong committed an aggravated felony would bar Chong from reentering the United States. Moreover, if we reversed the Board's finding that Chong committed a "particularly serious crime," it seemingly would be too late for the Attorney General to withhold removal, since Chong already has been deported. Nevertheless, we suppose that, were we to reverse the Board's decision, the Attorney General could exercise his discretion and grant "withholding" of removal and allow Chong to reenter the United States. Accordingly, we hold that Chong's inability to reenter the United States for ten years after her deportation is a sufficient collateral consequence stemming from the Board's order of removal to render Chong's petition justiciable under Article III, S 2.

B. The Merits

Turning to the merits of the appeal, Chong argues that the Board violated (1) her due process rights, (2) the INA, and (3) INS regulations. We address these arguments in turn.

1. Did the Board's Actions Comply with Due Process?

Chong claims that the Board violated her due process rights by not giving her notice that it would decide whether she committed a "particularly serious crime" without remanding to the IJ and by not providing her with an opportunity to be heard on the "particularly serious crime" issue. We review de novo whether the Board violated Chong's due process rights. See Larita-Martinez v. INS, 220 F.3d 1092, 1095 (9th Cir. 2000).

Aliens facing removal are entitled to due process. Chlomos v. United States Dep't of Justice, INS, 516 F.2d 310, 313 (3d Cir. 1975). The Supreme Court has observed:

> We are dealing here with procedural requirements prescribed for the protection of the alien. Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom. That deportation is a penalty--at times a most serious one--cannot be doubted. Meticulous care must be exercised lest the procedure by which he is deprived of that liberty not meet the essential standards of fairness.

Bridges v. Wixon, 326 U.S. 135, 154 (1945)."The fundamental requirement of due process is the opportunity to be heard `at a meaningful time and in a meaningful manner.' " Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (citation omitted). Specifically, due process requires that Chong: (1) be entitled to factfinding based on a record produced before the Board and disclosed to her; (2) be allowed to make arguments on her own behalf; and (3) have the right to an individualized determination of her interests. See Abdulai v. Ashcroft, 239 F.3d 542, 549 (3d Cir. 2001).

Chong contends that the Board violated her due process rights by affirming the IJ's decision without remanding to the IJ for an individualized hearing. We disagree. An individual's due process right to be heard does not ensure a hearing in all contexts, as such a requirement"would grind judicial and administrative gears to a screeching halt." Elliott v. Kiesewetter, 98 F.3d 47, 60 (3d Cir. 1996).

11

Instead, administrative bodies can preserve an individual's due process right to be heard in many different ways. Id.

In this case, Chong received a live hearing before the IJ, at which point she was afforded the opportunity to argue that her drug convictions did not rise to the level of "particularly serious crimes," and to present evidence to the IJ supporting her position. The IJ created a record of the proceedings, which was then transmitted to the Board for review. In deciding that Chong had committed a "particularly serious crime," the Board looked at the specific facts of Chong's case--engaging in the "individualized determination" that Abdulai requires--rather than blindly following a categorical rule, i.e., that all drug convictions qualify as "particularly serious crimes." 239 F.3d at 549. Due process requires no more. See id. at 549- 50; see also Ladha v. INS, 215 F.3d 889, 903-04 (9th Cir. 2000) (holding that once an alien receives a full and fair hearing in front of an IJ, due process is satisfied).

Holding otherwise would give Chong the proverbial "second bite at the apple." Once an alien has had a chance to offer evidence and raise arguments on the "particularly serious crime" issue during a removal proceeding, we can see no persuasive reason for requiring that she receive a second hearing on the question. Nor do we think that due process necessitates such a redundant procedural measure.

Chong also argues that the Board violated her due process rights by not giving her the opportunity to submit evidence to the Board. In fact, the Board did not prevent Chong from submitting evidence relevant to the "particularly serious crime" analysis. However, since Chong believed that the Board would remand her case to the IJ for a hearing, Chong did not submit any evidence to the Board. Perhaps the Board should have provided notice to Chong that it would decide the "particularly serious crime" issue without remanding to the IJ, thereby indicating to Chong that she should submit any evidence she wished to be considered. But the Board's failure to provide notice to Chong does not constitute a due process violation. Chong had the opportunity to present any evidence concerning the "particularly serious crime" determination to the IJ, and the

Board had the administrative record before it when deciding Chong's appeal. This procedure satisfies due process. See Abdulai, 239 F.3d at 549-50; see also Ladha, 215 F.3d at 903-04 (holding that once an alien receives a full and fair hearing in front of an IJ, due process is satisfied).

2. Did the Board Err in Interpreting the INA?

Chong argues that the Board violated 8 U.S.C. S 1231(b)(3)(B) by not granting her an individualized hearing to determine whether she committed a "particularly serious crime." We accord Chevron deference to the Board's interpretation of the INA. INS v. Aguirre-Aguirre, 526 U.S. 415, 424 (1999). Our inquiry, therefore, is limited to determining whether the INA is silent or ambiguous with respect to what constitutes a "particularly serious crime," and, if so, whether the Board's answer is based on a permissible construction of S 1231(b)(3)(B). See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984).

The INA is silent concerning how the Board should determine whether an alien has committed a "particularly serious crime" when a court has convicted the alien of an aggravated felony for which the court sentenced the alien to less than five years imprisonment. The statute simply notes that the Attorney General is not precluded "from determining that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime." 8 U.S.C. S 1231(b)(3)(B). In other words, where a court has sentenced an alien to less than five years for an aggravated felony, the statute grants the Attorney General discretion to determine whether that alien has committed a "particularly serious crime."

The Board has explained that when determining whether a crime is "particularly serious,"

> consideration of the individual facts and circumstances is appropriate . . . This inquiry does not involve an examination of the respondents' family or community ties, or the risk of persecution in the alien's native country. To make this determination, we look to the conviction records and sentencing information.

13

> Further, we do not engage in a retrial of the alien's criminal case or go behind the record of conviction to redetermine the alien's innocence or guilt.

In re L-S-, Interim Decision 3386, 1999 WL 219344 (BIA Apr. 16, 1999). As this language demonstrates, In re L-S- simply requires that an individualized examination or determination of the "particularly serious crime" issue be conducted, not that an individualized hearing be held. We conclude that the Board's interpretation of S 1231(b)(3)(B) is reasonable because it guides and channels the Attorney General's discretion to determine whether an alien like Chong has committed a "particularly serious crime," thereby helping to ensure that the Attorney General does not make this determination in an arbitrary or inconsistent manner.

Moreover, we conclude that the Board's interpretation of S 1231(b)(3)(B) as necessitating only an individualized examination of the "particularly serious crime" issue, rather than an individualized hearing, is a permissible one. As we noted supra in Part II.B.1., when an alien already has been provided the opportunity to mount arguments and present evidence on the "particularly serious crime" question during a live removal hearing, due process does not require a second hearing on the issue. All that the Constitution mandates is an "individualized determination," which the Board's construction affords. Abdulai, 239 F.3d at 549. Thus, we reject Chong's argument that the Board violated S 1231(b)(3)(B).

To the extent that Chong contends that the Board violated its precedent by not conducting an individualized determination of her case, we disagree. In fact, the Board did conduct an independent determination of the facts and circumstances of Chong's case. The Board noted that although Chong's two-year sentence was below the five-year term that requires an aggravated felony to be considered a per se "particularly serious crime," the district court departed from the minimum sentence due to Chong's assistance to the INS. The Board stated: "This is different from a sentence reduction due to a minor role in the offense or other mitigating factors." The Board examined the complaint against Chong and asserted that "over

14

several years, [Chong] handled money derived from selling drugs and arranged telephonic connections for people involved in the conspiracy to promote the distribution of large amounts of heroin." This examination of the record and sentencing information is all that Board precedent requires.

3. Did the Board Violate INS Regulations?

Finally, Chong claims that the Board violated S 3.7 of the INS regulations. In this case, the IJ certified his decision to the Board. When an IJ knows at the time he issues a decision that he will certify the case to the Board, as is the case here, the INS regulations require the IJ to provide a Notice of Certification. 8 C.F.R. S 3.7 (2001). The regulations further require that the Notice of Certification "inform the parties that they have the right to make representations before the Board, including the making of a request for oral argument and the submission of a brief." Id. In this case, the Notice of Certification did not inform Chong that she could "make representations before the Board." Id.

"[O]ur standard of review is even more deferential when an agency is interpreting a regulation rather than a statute that it administers." Abdulai, 239 F.3d at 552. An agency's interpretation of its own regulation is "controlling . . . unless it is plainly erroneous or inconsistent with the regulation." Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945). The government, although acknowledging that the Notice of Certification did not provide Chong with the notice that S 3.7 requires, points out that the INS regulations state that the "Board in its discretion may review any such case by certification without regard to the provisions of S 3.7 if it determines that the parties have already been given a fair opportunity to make representations before the Board regarding the case, including the opportunity [to] request oral argument and to submit a brief." 8 C.F.R. S 3.1(c). The government notes that Chong filed a memorandum with the IJ in which she argued that her convictions did not preclude her from qualifying for withholding of removal. This evidence was part of the administrative record before the Board when it decided Chong's appeal. Therefore, the government

15

concludes, the Board could have determined, underS 3.1(c), that Chong already had been given a fair opportunity to make representations before the Board. We disagree.

The Board could not have determined that Chong had the opportunity to make representations "before the Board" because at the time the IJ certified his decision, Chong had not submitted any documents to the Board. The INA defines the "Board" as "the Board of Immigration Appeals," and has a separate definition for "immigration judge." 8 C.F.R. S 1.1(e) (2001); id. at S 1.1(l). Thus, we cannot consider documents Chong submitted to the IJ to be "representations before the Board." Id. at S 3.7. Accordingly, the IJ violated S 3.7 by not informing Chong that she could "make representations before the Board, including the making of a request for oral argument and the submission of a brief." Id.

However, we hold that to warrant reversal, the S 3.7 violation must have prejudiced Chong. "[A]n agency's failure to afford an individual safeguard required under its own regulations may result in the invalidation of the ultimate administrative determination," even if the regulation is not constitutionally mandated. United States v. Morgan, 193 F.3d 252, 266 (4th Cir. 1999); see also Service v. Dulles, 354 U.S. 363, 388 (1957) ("While it is of course true that . . . , the Secretary was not obligated to impose upon himself these more rigorous substantive and procedural standards, . . . having done so he could not, so long as the Regulations remained unchanged, proceed without regard to them."). This principle is rooted in the doctrine originated in United States ex rel. Accardi v. Shaughnessy , 347 U.S. 260 (1954), where the Supreme Court vacated a Board deportation order because the procedures leading to the order failed to comply with INS regulations. Id. at 267. Although the Accardi doctrine originally contemplated that an agency's failure to comply with its own rules automatically would nullify its actions, the Supreme Court since has "required that claimants demonstrate prejudice resulting from the violation unless `[t]he rules were not intended primarily to confer important procedural benefits upon individuals in the face of otherwise unfettered discretion' or unless `an agency required by rule to exercise

16

independent discretion has failed to do so.' " Morgan, 193 F.3d at 267 (quoting American Farm Lines v. Black Ball Freight Serv., 397 U.S. 532, 538–39 (1970)).

In Waldron v. INS, 17 F.3d 511 (2d Cir. 1994), the Second Circuit rejected the habeas petitioner's request to reverse the Board when the IJ did not provide the petitioner with a Notice of Certification under S 3.7. The court stated that

> when a regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute, and the INS fails to adhere to it, the challenged deportation proceeding is invalid and a remand to the agency is required . . . . On the other hand, where an INS regulation does not affect fundamental rights derived from the Constitution or a federal statute, we believe it is best to invalidate a challenged proceeding only upon a showing of prejudice to the rights sought to be protected by the subject regulation.

17 F.3d at 518.2 The court then turned to decide whether fundamental rights with constitutional or federal statutory origins are implicated by S 3.7's admonition that "[i]f it is known at the time the initial decision is made that the case will be certified, the notice of such certification shall be included in such decision." 8 C.F.R. S 3.7. The Waldron Court held that S 3.7 does not implicate a fundamental

_____

2. In reaching its conclusion that some violations of INS regulations require reversal without necessitating a showing of prejudice, a majority of the Waldron panel rejected the Ninth Circuit's approach of "requir[ing] a demonstration of prejudice irrespective of whether the subject regulation was designed to protect a fundamental right derived from the Constitution or a federal statute." 17 F.3d at 518 (citing United States v. Calderon–Medina, 591 F.2d 529 (9th Cir. 1979)). Judge Walker's concurring opinion disagreed with the majority's analysis and instead argued that when the Board violates an INS regulation, the petitioner always must show that the violation caused prejudice. Waldron, 17 F.3d at 519–21 (Walker, J., concurring). We need not express an opinion regarding this dispute due to our holding that S 3.7 does not implicate a fundamental constitutional or statutory right. Thus, even under the "stricter" approach of the Waldron majority, the S 3.7 violation must have prejudiced Chong to warrant reversal.

17

constitutional or statutory right, as it primarily addresses the procedure for notifying an alien that the case is being certified to the Board. 17 F.3d at 518.

We agree with the Second Circuit that S 3.7 is "not grounded in any underlying fundamental constitutional or statutory right." Id. As the Second Circuit noted, S 3.7 simply "addresses the procedure for notifying an alien that the case is being certified to the [Board.]" Id. Thus, the S 3.7 violation must have prejudiced Chong to warrant reversal.

Chong argues that the IJ's failure to provide her with notice that she could make representations before the Board prejudiced her because, had she been given the opportunity to present evidence to the Board, she would have submitted the Pre-Sentence Investigation Report, which states that Chong was a "minor participant" in the heroin scheme. Additionally, Chong claims that she would have produced several witnesses who would have testified to the basis by which the prosecuting authorities found that she was a minor participant. But since Chong fails to address the Board's alternate holding that she does not have a valid claim for withholding of removal, we hold that the S 3.7 violation did not prejudice Chong.

Before the IJ, Chong conceded that her drug convictions constituted aggravated felonies. See 8 U.S.C. S 1101(a)(43)(B) (2000) (defining "aggravated felony," in part, as "illicit trafficking in a controlled substance. . . , including a drug trafficking crime"). Since the INA provides that an alien who is convicted of an aggravated felony is deportable, the IJ correctly found Chong subject to removeability. See id. at S 1227(a)(2)(iii).

Chong sought to avoid deportation by requesting withholding of removal. The INA prohibits the Attorney General from removing an alien if he "decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." Id. at S 1231(b)(3)(A). Chong claimed that the Malaysian government would threaten her freedom by prosecuting her for her American drug crimes because of her Chinese ethnicity. The Board rejected Chong's claim,

18

holding that she "does not have a valid claim for withholding of removal because she merely fears a subsequent prosecution in Malaysia due to her drug trafficking offense in the United States. [Chong] has not shown that any such prosecution would include elements of persecution because she is ethnic Chinese." Chong does not contest this holding on appeal.

Instead, Chong claims that the Board erred in holding that she committed a "particularly serious crime." But by focusing on the Board's determination that she committed a "particularly serious crime," rather than on the Board's holding that her freedom would not be threatened in Malaysia due to her Chinese ethnicity, Chong puts the cart before the horse. Chong must show that the Board erred in determining that her freedom would not be threatened in Malaysia due to her Chinese ethnicity before demonstrating that the exception for aliens who commit "particularly serious crimes" does not pertain to deny her withholding of removal. Thus, even though the IJ violated S 3.7, Chong's failure to contest the Board's finding that her freedom would not be threatened in Malaysia due to her Chinese ethnicity requires us to hold that this violation did not prejudice her. See In re Public Serv. Co. of N.H., 879 F.2d 987, 989-90 (1st Cir. 1989) (per curiam) (affirming because the appellant challenged only one of two alternate bases for the bankruptcy court's decision, "for whatever we might decide about [one basis for the bankruptcy court's decision] could in no way affect the correctness of the bankruptcy court's denial of relief "); MacKay v. Pfeil, 827 F.2d 540, 542 n.2 (9th Cir. 1987).

III.

We have jurisdiction to hear Chong's habeas petition because the Board's order of removal creates collateral consequences that render her appeal a live case or controversy under Article III. The Board has not violated Chong's due process rights or the INA. Although the IJ did violate INS regulations, this violation did not prejudice Chong. Accordingly, we AFFIRM the District Court's denial of Chong's petition.

19

A True Copy:
Teste:

    Clerk of the UnitedStates Court of Appeals
    for the Third Circuit

20