

Villanova University School of Law
Villanova University School of Law Digital Repository

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-20-2004

# Ahmed v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3637

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Ahmed v. Atty Gen USA" (2004). *2004 Decisions*. Paper 484.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/484

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No:  02-3637

MOHAMAD SELIM AHMED,

Petitioner

v.

JOHN ASHCROFT
ATTORNEY GENERAL OF THE UNITED STATES

On Petition for Review of an Order of Removal from
the Board of Immigration Appeals
U.S. Department of Justice
Executive Office for Immigration Review
(BIA No. A70-048-892)

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 6, 2003

Before: McKEE and SMITH, Circuit Judges,
and GREENBERG, Senior Circuit Judge.

Filed ( July 20, 2004 )

OPINION

McKee, Circuit Judge.

Mohamad Selim Ahmed petitions for review of the Board of Immigration

Appeals' order affirming the Immigration Judge's order of removal.  For the reasons that

follow, we will affirm.

# I.

Because we write only for the parties, we need not reiterate the facts except insofar as may be helpful to our brief discussion.

Ahmed is a native and citizen of Syria. He entered the United States on June 12, 1988 as a nonimmigrant with authorization to remain until August 2 of the same year. A.R. 227. Sometime in 1989, he filed an application for asylum with the Immigration and Naturalization Service[1] in Newark, New Jersey. A.R. 143-44.[2] On October 11, 1990, he filed a second application for asylum in Los Angeles, California and was interviewed by an asylum officer the same day. A.R. 211-15. However, no decision was reached at that time. On August 26, 1998, almost eight years later, the INS conducted a second asylum interview, and determined that Ahmed was ineligible for relief. A.R. 186-87. Shortly thereafter, the INS initiated removal proceedings against Ahmed for overstaying his visa in violation of 8 U.S.C. § 1227 (a)(1)(B). A.R. 227.

Ahmed conceded removability before the immigration court, but applied for asylum and withholding of removal or, in the alternative, voluntary departure. A.R. 59-60. As part of his asylum application, he submitted a declaration describing two incidents

---

[1] Effective March 1, 2003, the INS ceased to exist, and its interior enforcement functions were transferred to the Department of Homeland Security, Bureau of Immigration and Customs Enforcement. *See* Homeland Security Act, 116 Stat. 2135 Pub. L. 107-296 § 441 (2002).

[2] This application was not presented below (A.R. 41-42), and is not part of the record before us.

of "abuse and mistreatment on account of [his] political views." A.R. 195. First, Ahmed stated that in 1979, he was "beaten and abused for voting in opposition to President Assad in a national election." *Id*. Second, he claimed that, in 1983, he was detained and beaten for twenty-five days because he wrote a paper expressing his disapproval of the Syrian government's economic policies. Ahmed stated that he was eventually released on the condition that he become a government informant and never tell anyone about his detention. A.R. 196-97. Neither incident was mentioned in his 1990 application or during his immigration interviews.

On January 14, 1999, the IJ set a hearing date of April 27 and stated that he would not consider "anything" submitted less than 10 days prior to the hearing. A.R. 63. At the hearing, Ahmed's counsel requested, for the first time, that his psychiatrist, Dr. Delston, be allowed to testify on his client's behalf and that his written report be submitted into evidence. A.R. 67-68. The IJ refused both requests. A.R. 72. Thereafter, Ahmed testified on his own behalf and described the 1979 and 1983 incidents.

The IJ ultimately denied Ahmed's claim, finding that his testimony was not credible. A.R. 39. Alternatively, the IJ found that, even if Ahmed testified truthfully, he had not established a well-founded fear of future persecution because the most recent incident of abuse occurred more than 16 years prior to the hearing. A.R. 42. However, the IJ did grant Ahmed's request for voluntary departure. On August 29, 2002, the BIA issued a *per curium* order affirming the IJ's decision without opinion pursuant to 8 C.F.R.

3

§ 1003.1(e)(4), thereby making it the final agency determination. A.R. 2. This appeal

followed.

## II.

### A.    Credibility Determination

The Attorney General has discretion to grant asylum to an alien who qualifies as a

"refugee." 8 U.S.C. § 1158(b). The Immigration and Nationalization Act defines

"refugee" as:

> any person who is outside any country of such person's
> nationality or, in the case of a person having no nationality, is
> outside any country in which such person last habitually
> resided, and who is unable or unwilling to return to, and is
> unable or unwilling to avail himself or herself of the
> protection of, that country because of persecution or a well-
> founded fear of persecution on account of race, religion,
> nationality, membership in a particular social group, or
> political opinion.

8 U.S.C. § 1101(a)(42)(A). In order to meet this standard, an alien must possess "a

subjective fear of persecution that is supported by objective evidence that persecution is a

reasonable possibility." *Chang v. INS*, 119 F.3d 1055,1166 (3d Cir. 1997). In other

words, "[t]he applicant's statements . . . must be viewed in the context of the relevant

background situation. " *Matter of Dass*, 20 I.& N. Dec. 120, 125 (1989). However, an

alien does not have to show a clear probability of persecution in order to be granted

asylum. As the Supreme Court noted in *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431

(1987), "[o]ne can certainly have a well-founded fear of an event happening when there is

4

less than a 50% chance of the occurrence taking place." If an alien establishes that he/she suffered past persecution, a rebuttable presumption arises that he/she has a well-founded fear of persecution in the future. 8 C.F.R. § 208.13(b)(1).

In order to withstand appellate review, the agency's decision must be supported by "substantial evidence." *Balasubramanrim v. INS*, 143 F.3d 157, 161 (3d Cir. 1998). "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . ." *N.L.R.B. v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939) (citation and internal quotation marks omitted). In other words, "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary . . . ." 8 U.S.C. § 1252(b)(4)(B). This standard applies with equal force to adverse credibility determinations. *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002) ("[A]dverse credibility determinations are reviewed for substantial evidence.") (citation omitted).

As stated above, the IJ denied Ahmed's claim for lack of credibility. His decision was based primarily on the fact that Ahmed did not mention the 1979 and 1983 incidents until after his application was denied by the INS. A.R. 39. Moreover, Ahmed not only failed to mention these incidents in his 1990 asylum application (A.R. 211-215), he also failed to discuss them in either of his two asylum interviews in 1990 and 1998. During

5

his testimony, Ahmed attempted to explain the latter two omissions. First, he testified that he did not mention these incidents during the 1990 interview because he did not trust his cousin, who was acting as his interpreter. A.R. 138-40. Later, he testified that he chose not to mention these incidents during the 1998 interview because he was not sure whether he could add any "new" information to his claim at that point. A.R. 142. The IJ found both explanations implausible. A.R. 41. Finally, the IJ noted that Ahmed's "overall demeanor and way of answering questions . . . [was] utterly evasive . . . ." A.R. 42.[3]

Ahmed's failure to mention the 1979 and 1983 incidents were not minor omissions; rather, these allegations go to the very "heart of [his] asylum claim." *Gao*, 299 F.3d at 272 (citation and internal quotation marks omitted). Those incidents are, in fact, the only evidence of persecution offered in support of his claim. Without them, there is no question that his application would be summarily denied. This case is therefore distinguishable from *Balasubramanrim*, 143 F.3d 157, where we held that courts must be careful not to place too much emphasis on statements made by an alien during an involuntary interview conducted immediately upon his/her arrival in the United

_____

[3] The IJ also mentioned that there were some discrepancies between Ahmed's 1989 and 1990 asylum applications. A.R. 41-42. However, because Ahmed's 1989 application was never introduced into evidence, the IJ was forced to admit that he "[did not] really know what those differences [were]." *Id*. Therefore, we will not consider Ahmed's 1989 application in determining whether there was substantial evidence to support the IJ's adverse credibility determination.

6

States. There, we stated that "an arriving alien who has suffered abuse during interrogation sessions by government officials in his home country may be reluctant to reveal such information during the first meeting with government officials in this country." *Id*. at 163; *see also Senathirajah v. INS*, 157 F.3d 210, 218 (3d Cir. 1998) ("Given Senathirajah's allegations of torture and detention, he may well have been reluctant to disclose the breadth of his suffering in Sri Lanka to a government official upon arriving in the United States . . . ."). Ahmed had been in the United States for more than 2 years before filing his current asylum application. By the time the INS conducted its second interview and issued a decision on his application, he had been in the country for more than 10 years. Ahmed's application does not, therefore, present the intricacies that troubled us in *Balasubramanrim* and *Senathirajah*. We conclude that the IJ's credibility determination is supported by substantial evidence.[4]

### B.   Exclusion of Expert Witness' Testimony and Written Report

Ahmed also argues that his due process rights were violated when the IJ declined to consider the testimony and written report of his psychiatrist and expert witness, Dr. Delston. There is no question that an alien facing removal has a right to due process of law under the Fifth Amendment. *Chong v. INS*, 264 F.3d 378, 386 (3d Cir. 2001). "The fundamental requirement of due process is the opportunity to be heard at a meaningful

---

[4] In light of this finding, we need not consider whether the IJ's alternative rationale for denying Ahmed's claim–that he did not have a reasonable fear of future persecution–was supported by substantial evidence.

7

time and in a meaningful manner." *Id.* (citation and internal quotation marks omitted). In the context of removal proceedings, an alien: (1) is entitled to fact-finding based on the record before the court; (2) must be given the opportunity to make arguments on his/her own behalf; and (3) has the right to an individualized determination of his/her claims. *Id.* (citation omitted). *Id.* We review alleged due process violations in removal proceedings *de novo. Id.*

An "Immigration Judge may order any party to file a pre-hearing statement of position that may include, but is not limited to . . . a list of proposed witnesses and what they will establish." 8 C.F.R. § 3.21 (now located at 8 C.F.R. § 1003.21). Here, more than four months prior to the hearing, the IJ indicated that he would not accept "anything" submitted less than 10 days in advance of the hearing (hereinafter, "the 10-day rule"). A.R. 63. Nonetheless, at the hearing, Ahmed's counsel requested, for the first time, that Dr. Delston be allowed to testify on his client's behalf and that his written report be submitted into evidence. The last minute request caught the government by surprise as counsel for the government was unaware of Dr. Delston's qualifications and the nature and scope of his proposed testimony. A.R. 68. This problem was exacerbated by the fact that Dr. Delston "forgot" to bring his resumé to the hearing. *Id.* Not surprisingly, the IJ therefore refused to allow Dr. Delston's testimony or admit his written report.

That decision hardly offends notions of due process. Ahmed was clearly given an

opportunity to make arguments and submit evidence in support of his case in a "meaningful time and in a meaningful manner." *Chong*, 264 F.3d at 386. He simply failed to observe the reasonable evidentiary deadline imposed by the IJ. He then failed to offer a compelling reason why Dr. Delston's testimony and report should be exempted from the court's 10-day rule. At the hearing, counsel sought to justify the late submission by stating that, due to Dr. Delston's busy schedule, he only recently had an opportunity to evaluate Ahmed. A.R. 72. Counsel also indicated that he was unaware that his client was even evaluated by Dr. Delston until the day before the hearing. A.R. 69, 72.[5] These excuses are inadequate for several reasons. First, Ahmed had eight months to seek an expert psychological evaluation in support of his claim, beginning August 26, 1998, the date his asylum application was denied by the INS, and ending April 17, 1999, 10 days prior to the immigration court hearing. Even assuming that this period was somehow insufficient to schedule an appointment with Dr. Delston – which we seriously doubt – Ahmed should have found a psychiatrist willing to evaluate him within the court's deadline.

Ahmed also fails to explain why he did not bother to inform opposing counsel of his decision to seek a psychological evaluation.[6] There is simply no justification for his

---

[5] This is consistent with Ahmed's statement at the hearing that he "only called [counsel] yesterday . . . ." regarding his evaluation by Dr. Delston. A.R. 72.

[6] The actual date of Ahmed's visit to Dr. Delston is not clear from the record.

9

secretiveness, nor is there a judicial remedy. *Compare*, *Balasubramanrim*, 143 F.3d 157.

Finally, Ahmed has failed to offer any indication that the IJ's decision would have been influenced by Dr. Delston's testimony or report. *Colmenar v. INS*, 210 F.3d 967, 971 (2000) (In order to establish a due process violation, "an alien [must] show prejudice, which means that the outcome of the proceeding may have been affected by the alleged violation."). We fail to see how the witness' testimony would have changed Ahmed's credibility. In any event, it is clear that excluding the testimony does not implicate the Due Process Clause or deny Ahmed any of the constitutional protections he was entitled to.

## III.

Based on the foregoing analysis, we will affirm the BIA's decision.