

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-24-2004

# Uselis v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3986

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Uselis v. Atty Gen USA" (2004). *2004 Decisions.* Paper 389.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/389

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 02-3986

LINAS USELIS, DAIVA USELIENE,
DEIMANTE USELYTE, and DEIVIDAS USELIS,
Petitioners,

v.

JOHN ASHCROFT, ATTORNEY GENERAL
Respondent

Appeal from the Board of Immigration Appeals
(Agency Nos. A75-986-708, -709, -710, and -711)

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 3, 2003

(Filed: August 24, 2004)

Before: McKEE, SMITH, and WEIS, Circuit Judges.

OPINION

McKEE, Circuit Judge.

Linas Uselis and Daiva Useliene, and their children appeal the decision of the

Board of Immigration Appeals affirming the denial of their applications for asylum and

withholding of removal. Petitioners are Lithuanian nationals. For the reasons that

follow, we will affirm.

**I.**

Because we write only for the parties, it is not necessary to recite the facts of this

case in detail. The petitioners conceded that they were eligible for removal as they had

overstayed their temporary visitor visas, but they filed applications for political asylum and withholding of removal. In support of those applications, they argued that they had suffered persecution because of their religion, and because of their participation in a small business group which protested heavy government taxes. The IJ denied their applications after a hearing, and the BIA summarily affirmed. This appeal followed.

### III.

The petitioners argue that the IJ abused his discretion and committed errors of law, and that the BIA erred in summarily affirming the IJ's decision pursuant to the BIA's streamlined procedures for handling appeals from Immigration Judges. Each issue will be considered separately.[1]

### A.

An IJ may grant asylum to an applicant who "is unable or unwilling to avail himself or herself of the protection of [a] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]" 8 U.S.C. §§ 1101(a)(42)(A), 1158.[2]

---

[1] Because the BIA did not render its own opinion, we must review the decision of the IJ. *Abdulai v. Ashcroft*, 239 F.3d 542, 549 n.2 (3d Cir. 2001).

[2] We review IJs' judgments regarding asylum and withholding of removal for abuse of discretion. *Janusiak v. INS*, 947 F.2d 46, 47 (3d Cir. 1991). We review IJs' factual determinations regarding whether an asylum applicant has demonstrated past persecution or a well-founded fear of future persecution only to ensure there is substantial evidence for their determinations, i.e., that their findings are "supported by reasonable, substantial and probative evidence on the record considered as a whole." *INS v. Elias Zacarias,* 502 U.S. 478, 480 (1992).

Persecution includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom" but excludes "generally harsh conditions shared by many other persons[.]" *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993). The alien has the burden of presenting evidence that he/she has suffered actual past persecution, or that he/she has a well-founded fear of future persecution. *Id*. An application for withholding of removal is similar, but demands a higher burden of proof. To succeed in an application for withholding of removal, the alien must establish a clear probability that his/her life or freedom would be threatened in the proposed country of removal. *Janusiak v. INS*, 947 F.2d 46, 47 (3d Cir. 1991); *see also* 8 U.S.C. §§ 1231(b)(3)(A).

Petitioners' claim for asylum based on political activity rests upon their assertion that they have been subjected to past persecution due to Mr. Uselis' statements in Lithuania opposing high taxes. They alleged receiving daily telephone calls stating that Mr. Uselis would "have bad luck" and go out of business unless he paid his taxes and ceased his protests. They allege that the family's residence and store were burglarized and vandalized several times. They also allege that Mr. Uselis was beaten by three unknown men who told him to stop protesting the high taxes or close his store. Mr. Uselis did not go to the hospital because the men allegedly left him "black and blue" but did not break anything. As a result, the petitioners state that they ultimately had to close their store.

3

Petitioners also claim that they were persecuted due to their membership in their church. However, the "persecution" they testified to amounted only to statements of the owner of the private hall where they worshiped telling them they "'could not' allow [petitioners] to meet there any more." Appellants' Br. at 15. The only testimony that they offered to establish a discriminatory motive was their claim that "[t]he pressure apparently built up for this landlord, since the new government was frightened by any new religion in the newly independent nation." *Id.*

The harm alleged here clearly falls short of "persecution." Under *Fatin*, "persecution" for purposes of asylum requires such harm as detention, torture or life-threatening injury. There is no allegation of detention, torture or similar harm as a result of petitioners' religion or political activities. Mr. Uselis did testify that he had been beaten. However, even if the government was responsible for that beating Mr. Uselis testified it did not result in hospitalization.

Similarly, although the store closing may well have created economic hardships, there is no suggestion that it threatened petitioners' lives. We do not doubt that the economic situation in Lithuania was difficult, as Mr. Uselis testified. However, the IJ did not abuse his discretion in concluding that "there were certainly other avenues for the family to earn a livelihood." R. at 59.

Finally, there is no evidence that the Uselis family suffered religious persecution. Even if we accept their testimony regarding their "eviction" from the hall where they

4

worshiped, there is nothing to suggest government involvement or that they could not find another "hall" or apartment to hold religious meetings in. Moreover, the testimony does not even establish that they were denied access because of their religion. Mr. Uselis admitted he was assuming that the decision to deny access was based on his religion but this assumption was only based on the fact that the building manager refused to continue renting the space to his group. R. at 89-90.

Accordingly, petitioners have not provided sufficient evidence of past persecution or objective support for a well-founded fear of future persecution and we must affirm the BIA's affirmance of the IJ's denial of their asylum claim. Since they were unable to establish their eligibility for asylum, they clearly could not satisfy the higher burden necessary for withholding of removal. *See Chang v. INS*, 119 F.3d 1055, 1059 (3d Cir.1997).

**B.**

Petitioners next assert that the IJ violated their Fifth Amendment due process rights during their hearing because he did not permit their counsel to ask leading questions, did not allow their expert to testify, and the IJ repeatedly interrupted petitioners' testimony.[3]

To prove a due process violation, the petitioners must show that the alleged denial

---

[3] We review an alleged due process violation based upon the manner in which an IJ conducts a deportation hearing *de novo*. *Lee Moi Chong v. INS*, 264 F.3d 378, 386 (3d Cir. 2001).

5

of due process substantially prejudiced their case. This means that petitioners must "produce some concrete evidence to show that the alleged due process violation had the potential for affecting the outcome of [their] case." *Id*. (internal quotation marks and citation omitted).

Even if we accept the rather remarkable proposition that the failure to allow leading questions can somehow rise to the level of a due process violation, petitioners can still not establish the necessary prejudice. Their remaining evidentiary attacks are equally devoid of merit.[4]

## C. The BIA's Streamlined Appellate Procedure

The petitioners also argue that the BIA violated their due process rights by summarily affirming the IJ's decision pursuant to 8 C.F.R. § 3.1(a)(7) (2002). R. at 2. However, we have already upheld the BIA's "streamlined" summary affirmance procedures and we therefore must reject petitioners' challenge to them. *See Dia v. Ashcroft*, 353 F.3d 228 (3d Cir. 2003) (*en banc*).

## III.

---

[4] They argue the IJ erred in not allowing their expert witness to testify. However, they state only that the expert would have testified regarding "his familiarity with modern evangelical religious movements in post-communist countries." Appellants' Br. at 36. That, of course, was not the issue because petitioners had not established that they were persecuted in the first place.

Petitioners also argue that the IJ repeatedly interrupted their counsel and prevented him from presenting their case. They do not, however, cite to any specific instances in the record to support this claim, nor do they show how their case was compromised because of the alleged interruptions. We will not reverse the decision of the IJ based only upon unsupported allegations of error.

For the above reasons, we will affirm the ruling of the BIA.