OPINION OF THE COURT
HARDIMAN, Circuit Judge.
Petitioner Carlos Enrique Salazar Quiceno[1] appeals an order of the Board of Immigration Appeals (BIA) reversing the Immigration Judge’s (IJ) grant of withholding of removal. Because the BIA did not err in finding that Salazar was convicted of a “particularly serious crime,” we will deny the petition for review.
I.
As we write exclusively for the parties, who are familiar with the procedural context and factual history of the case, we recount only those facts necessary to our decision.
A native and citizen of Colombia, Salazar entered the United States in 1972 as a nonimmigrant visitor and became a lawful *42 permanent resident in 1978. On January 29, 2004, Salazar pleaded guilty in New York state court to attempted robbery in the third degree and was sentenced to five years probation. N.Y. Penal Law §§ 110.00, 160.05 (McKinney 2008). Two years later, Salazar pleaded guilty to soliciting prostitution, which caused her probation on the armed robbery conviction to be revoked, resulting in a sentence of one to three years imprisonment.
The Department of Homeland Security (DHS) issued a Notice to Appear (NTA) charging Salazar with being subject to removal for having been convicted of an aggravated felony. INA § 237(a)(2)(A)(iii); 8 U.S.C. § 1227(a)(2)(A)(ii). Salazar admitted the factual allegations in the NTA, but applied for withholding of removal and protection under the Convention Against Torture (CAT).
On May 8, 2007, the IJ found that Salazar qualified for withholding of removal, holding that she had “met [her] burden of proof to establish that [s]he is likely to encounter persecution as a member of the extended LGBT community in Colombia.” Prior to making this determination, the IJ found as a threshold matter that Salazar was not barred from seeking withholding of removal under 8 U.S.C. § 1231(b)(3)(B)(iii) because her armed robbery conviction was not a “particularly serious crime.” In his written decision, the IJ credited Salazar’s testimony regarding the armed robbery.
The Department of Homeland Security (DHS) appealed the IJ’s decision. The BIA sustained the appeal, concluding that the IJ erred in determining that Salazar’s conviction for attempted robbery was not a “particularly serious crime” that would render her ineligible for withholding of removal.
Salazar filed a Petition for Summary Action or Review on November 6, 2007, and concurrently filed an Emergency Motion for Stay of Removal. Though we eventually granted that motion on January 14, 2008, DHS removed Salazar to Colombia on December 10, 2007, prior to our grant. Despite Salazar’s absence, we now hear this appeal.[2]
n.
We have jurisdiction to review the BIA’s order under 8 U.S.C. § 1252(a). Under Alaka v. Attorney General, 456 F.3d 88 (3d Cir.2006), we review de novo the question whether Salazar’s robbery conviction is a particularly serious crime. Id. at 104.[3]
*43 Salazar asserts that the BIA erred by applying the wrong legal standard in its “particularly serious crime” analysis. In the withholding of removal context, a particularly serious crime is an aggravated felony for which the alien was sentenced to five years imprisonment or an aggravated felony that the Attorney General deems a particularly serious crime. 8 U.S.C. § 1231(b)(3)(B); Alaka, 456 F.3d at 105. The INA is silent concerning how the Board should determine whether an alien has committed a “particularly serious crime” when she is convicted of an aggravated felony, but sentenced to less than five years imprisonment. Chong v. District Director, 264 F.3d 378, 387 (3d Cir. 2001). In those cases, the statute grants the Attorney General discretion to determine whether the alien has committed a “particularly serious crime.” Id. We will defer to the BIA’s interpretation of the statutory phrase “particularly serious crime” as long as it is reasonable. See Chevron U.S.A. Inc. v. Natural Res. Def. Council, 467 U.S. 837, 843-44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); Chong, 264 F.3d at 387.
Although the BIA’s decision did not reference its most recent standard for determining what constituted a particularly serious crime, see In re N-A-M-, 24 I. & N. Dec. 336 (BIA 2007), the BIA’s analysis in Salazar’s case was consistent therewith.[4] The BIA properly focused on the nature of the offense for which Salazar was convicted, rather than on the likelihood of future misconduct. See id. at 342. The BIA observed that the statute under which Salazar was convicted requires an intention to use, or threaten to use, physical force upon another person, while noting that the use or threat of violence during a crime is a significant factor when determining whether the crime is particularly serious. See In re L-S-, 22 I. & N. Dec. 645, 655 (BIA 1999). In doing so, the BIA corrected the IJ’s legal error in ignoring the elements of Salazar’s offense.
Salazar asserts that the BIA erred by failing to defer to the IJ’s findings of fact. We disagree. The BIA was under no obligation to defer to the IJ’s factual findings to the extent those findings credited Salazar’s testimony alone in contravention of her crime. Indeed, the BIA correctly noted that Salazar’s version of the events was inconsistent with her guilty plea. In contrast to the IJ, the BIA properly focused on the nature of the underlying conviction, rather than impermissibly relitigating Salazar’s crime. See id. at 651 (“Further, we do not engage in a retrial of the alien’s criminal ease or go behind the record of conviction to redetermine the alien’s innocence or guilt.”). The BIA properly analyzed the statutory elements of the crime for which Salazar was convicted, the record of her conviction, and the presentence investigation report (PSR).[5]
*44 Because the record illustrates that the BIA assessed the proper factors under N-A-M-, we need not determine whether it wrongly applied the standard laid out in Matter of Frentescu, 18 I. & N. Dec. 244 (BIA 1982). Though the BIA cited the Frentescu standard — which, according to N-A-M- placed undue emphasis on whether an alien will be a future danger to the community — there is no indication in the record that the BIA considered Salazar’s future dangerousness. Unlike Yusupov v. Attorney General, 518 F.3d 185 (3d Cir.2008), upon which Salazar relies, here we can discern from the record that the BIA applied the correct standard, so remand is unnecessary. See id. at 202.
For the foregoing reasons, we will deny Salazar’s petition for review.

. Salazar is a transgendered female who identifies as a woman and has completed sex reassignment surgery.

. At oral argument, we questioned counsel for the Government regarding the circumstances surrounding Salazar’s removal. On December 4, 2008, counsel reported in writing that Salazar’s removal was due to a lack of communication between DHS’s Immigration and Customs Enforcement (ICE) and the Department of Justice Office of Immigration Litigation (OIL). Because the Philadelphia ICE office failed to notify OIL that Salazar was scheduled for removal, OIL did not notify the Clerk of the Court, which would have triggered expedited review of Salazar’s stay motion. Although we recognize the challenges DHS faces in regulating the status of those persons who fall within its jurisdiction, we are troubled by the oversight in this case. We trust and expect that DHS will be more vigilant in ensuring others are removed only after this Court has been notified so that we may have the opportunity to review an alien’s motion for stay of removal before she is removed.

. The Government originally moved to dismiss this petition for lack of jurisdiction, arguing that the BIA’s decision whether a crime is "particularly serious” is discretionary and unreviewable under 8 U.S.C. § 1252(a)(2)(B)(ii). The Government’s reliance on Chong v. District Director, 264 F.3d 378 (3d Cir.2001), is misplaced. Although Chong characterized the BIA’s decision on the particularly serious crime issue as discretionary, id. at 387-88, we made clear in Alaka that § 1252(a)(2)(D) — enacted nearly four *43 years after we decided Chong — restored jurisdiction to review all constitutional and legal questions raised in a petition for review, notwithstanding the jurisdiction-stripping provisions of the Immigration and Naturalization Act. See Alaka, 456 F.3d at 103.

. N-A-M- was decided just five days prior to the BIA's decision in Salazar’s case.

. In her supplemental brief, Salazar argues that the BIA erred when it referred to the PSR. We disagree because the portion of the PSR cited by the BIA is consistent with the crime to which Salazar pleaded guilty. Though the Court of Appeals for the Second Circuit has questioned the reliability of PSRs, see Dickson v. Ashcroft, 346 F.3d 44, 54 (2d Cir.2003), here Salazar pleaded guilty to a crime whose elements entail the very facts cited in the PSR. N-A-M- requires the BIA to consider “all reliable information" rather then being “limited to reviewing the record of conviction and sentencing information." 24 *44 I. & N. Dec. at 343. In the circumstances of this case, we are confident that the portion of the PSR cited by the BIA was reliable.