

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-11-2009

# Rehman v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1453

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Rehman v. Atty Gen USA" (2009). *2009 Decisions.* Paper 1383.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1383

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 08-1453
_____

SAEED UR REHMAN,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(Agency No. A79 733 543)
Immigration Judge:  Honorable Miriam K. Mills

_____

Submitted Under Third Circuit LAR 34.1(a)
May 6, 2009

Before: RENDELL, GREENBERG and VAN ANTWERPEN, Circuit Judges

(Filed: May 11, 2009)

_____

OPINION OF THE COURT
_____

PER CURIAM

Petitioner, Saeed Ur Rehman, is a native and citizen of Pakistan, who entered the

United States on September 7, 2001 on a non-immigrant visa with permission to stay in

this country until June 6, 2002.[1]  Rehman remained beyond his authorized period and was served with a Notice to Appear on February 4, 2003, charging him as an overstay in violation of INA § 237(a)(1)(B).  Petitioner, through counsel, conceded the removal charge and sought relief on July 10, 2003 in the form of asylum, withholding of removal and protection under the Convention Against Torture ("CAT").  Rehman claimed that he had suffered persecution in the past because of his membership in the Pakistan Muslim League, Nawaz's group ("PML-N"), and that he fears persecution in the future on account of his political position.  He alternatively sought voluntary departure.

Rehman appeared before an Immigration Judge ("IJ") on January 25, 2005.  He testified as to his activities in the PML-N, various confrontations with officials (e.g., harassment by police in October 1999, arrested in December 1999, beaten in December 2000 and arrested again in May 2001), and the circumstances surrounding his visit to the United States and his attempts to extend his visa.  Rehman's attorney sought through this testimony to establish, inter alia, that "extraordinary circumstances" or "changed country conditions" (e.g., a raid on Rehman's home in June 2003) warranted a waiver of the one year deadline for filing an asylum application.  In support of his claim of a well-founded fear of future persecution, Rehman testified regarding an outstanding case against him and submitted a document known as a First Information Report (FIR) which he alleges

---

[1]  The June 6, 2002 date resulted from the grant of a visa extension.  Rehman sought a second extension, but that request was denied on January 24, 2003.

will result in him being taken into custody upon his return to Pakistan.[2]  After the hearing but prior to the IJ's issuance of a Decision, the government submitted a post-hearing memorandum and evidence which tended to dispute Rehman's contention that he did not have an opportunity to discuss his fear of returning to Pakistan with his attorney at the time he sought a second visa extension.  Rehman responded to the government's filing by seeking to have it excluded from the record on the basis of due process considerations.  A second government post-hearing filing was submitted on March 15, 2006, this one consisting of a Department of State Investigative Report on the authenticity of the FIR submitted by Rehman wherein it was concluded that the document was fraudulent.

In an Oral Decision and Order issued on April 27, 2006, the IJ denied Rehman the relief requested, but granted him voluntary departure.  The IJ concluded that petitioner's asylum application was untimely filed, and that the basis for a waiver of the one year period on account of changed circumstances had been exposed as fraudulent by the Department of State investigative report.  The IJ further noted the lack of evidence to support any other asylum deadline waiver, and thus determined that Rehman was statutorily ineligible for asylum.  Given Rehman's lack of credibility with respect to the FIR document – which he presented as corroboration for his arrests by the military government – the IJ further determined that Rehman failed to show that he would more likely than not be persecuted on account of a protected basis if he returns to Pakistan.

---

[2]  A FIR is apparently a type of police report which can serve as the basis for an arrest.

3

Similarly, the IJ "discredited" Rehman's claim for CAT relief based on his mistreatment in the form of government arrests, since that claim was also based on the FIR document. Finally, the IJ made mention of Rehman's inability to explain the apparent inconsistency between his alleged warrant for arrest by police and his ability to legally exit the country on his own passport despite the fact that Pakistan maintained an exit control list ("ECL").[3] Accordingly, the IJ denied all relief except voluntary departure.

The BIA affirmed the IJ's decision in an Order dated January 15, 2008. With the exception of that portion of the IJ's decision finding that Rehman's asylum application was untimely filed, the BIA adopted and affirmed the decision of the Immigration Judge. The BIA specifically found that the IJ's adverse credibility determination was not clearly erroneous, and concluded that a petitioner's submission of a false document indicates an overall lack of credibility. See Admin. Rec. at 2, citing Matter of O-D-, 21 I&N Dec. 1079 (BIA 1998). Additionally, because Rehman failed to submit any evidence to refute the Department of State forensic report on the validity of the FIR, the BIA was unwilling to remand the record for further proceedings. The BIA thus dismissed the appeal, and this timely petition for review followed.

Rehman raises the following allegations of error: 1) the IJ violated his due process right to a full and fair hearing by allowing the government to submit evidence after the

---

[3] The ECL is used to prevent the departure of wanted criminals and individuals who are under investigation for defaulting on loans, corruption or other offenses.

4

record had been closed; 2) the IJ erred in finding that petitioner had no credible fear of persecution if he were required to return to Pakistan; and 3) the IJ erred in finding that he had not filed his asylum application in a timely manner. Additionally, Rehman argues that this Court should take judicial notice of changed country conditions and remand the matter for additional factfinding.

Although we generally review only the decision of the BIA, where the BIA both adopts the findings of the IJ and supplements one or more bases of the IJ's decision with its own analysis and discussion, we review the decisions of both the BIA and the IJ. Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). Our review for the most part is highly deferential. We must uphold the agency's findings, including its determination of whether an alien was subject to persecution or has a well-founded fear of persecution, if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (quotation omitted).[4] Indeed, we may not reject these findings "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). See also Kibinda v. Attorney General, 477 F.3d 113, 119 (3d Cir. 2007). Our review of Rehman's due process challenge, on the other hand, is de novo. See Chong v. District Director, I.N.S., 264 F.3d 378, 386 (3d Cir. 2001).

---

[4] The provisions of the Real ID Act of 2005 concerning the Court's review of an adverse credibility finding do not apply in this case because Rehman applied for relief before the Act's effective date. See Kaita v. Attorney General, 522 F.3d 288, 296 (3d Cir. 2008).

Initially, we note it appears that Rehman only appeals the denial of his asylum and withholding of removal claims. Because he provides no argument in support of his CAT claim, we deem that issue waived. See Lie v. Ashcroft, 396 F.3d 530, 532 n. 1 (3d Cir. 2005). Additionally, while Rehman takes issue with the IJ's determination that his asylum application was untimely filed, respondent is correct in its assertion that the BIA did not adopt this finding. Admin. Rec. at 2 ("With respect to the Immigration Judge's decision finding the asylum application untimely, we do not adopt that portion of the decision."). Accordingly, that issue is not before us.

We turn now to Rehman's claim that the IJ violated his due process right to a full and fair hearing by allowing the government to submit evidence after the record had been closed.[5] This Court has recognized that due process protections are afforded to aliens facing removal. See, e.g., Abdulai v. Ashcroft, 239 F.3d 542, 549 (3d Cir. 2001) ("Despite the fact that there is no constitutional right to asylum, aliens facing removal are entitled to due process."). The requirements of due process "depend[ ] on the circumstances of the particular situation." Dia v. Ashcroft, 353 F.3d 228, 239 (3d Cir. 2003) (en banc) (quoting Marincas v. Lewis, 92 F.3d 195, 203 (3d Cir. 1996)). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Abdulai, 239 F.3d at 549 (3d Cir. 2001), quoting

---

[5] We reject the government's argument that Rehman's due process claim was not properly exhausted and that we are without jurisdiction to consider it. While Rehman's failure to specifically argue that he had been prejudiced by the IJ's consideration of the Investigative Report may have rendered his claim legally deficient, he nonetheless adequately alerted the BIA to the nature of the claim presented. See, e.g., Abdulrahman v. Ashcroft, 330 F.3d 587 (3d Cir. 2003).

Mathews v. Eldridge, 424 U.S. 319, 333 (1976)). Additionally, there is "no due process violation in the absence of prejudice." Wilson v. Ashcroft, 350 F.3d 377, 381 (3d Cir. 2003).

We do not hesitate to conclude that Rehman was afforded a meaningful opportunity to be heard. While it may be outside of normal procedure for an IJ to entertain a filing submitted as belatedly as the Investigative Report in the instant case, there is nothing in the record to indicate that Rehman was prevented from responding to the Investigative Report in the weeks that lapsed between the government's submission of the document and the issuance of the IJ's decision. In fact, the IJ specifically noted that Rehman was afforded an opportunity to rebut the document. See Admin. Rec. at 194. Moreover, the BIA indicated a willingness to consider any explanation or evidence that Rehman might have to offer to refute the report; however, none was presented. See Chong, 264 F.3d at 386-387. Although Rehman believes that a subsequent hearing should have been held to specifically address the Investigative Report, we have previously stated that "[a]n individual's due process right to be heard does not ensure a hearing in all contexts, as such a requirement 'would grind judicial and administrative gears to a screeching halt.'" Id. at 386, quoting Elliott v. Kiesewetter, 98 F.3d 47, 60 (3d Cir. 1996). Insofar as Rehman had an initial hearing where he presented evidence regarding the FIR and then had the subsequent opportunity to offer an explanation or evidence to the IJ and the BIA with respect to the government's forensic report, we conclude that due process was satisfied.

Rehman's argument regarding the IJ's finding with respect to the "exit control list"

7

fares no better. Rehman is correct in his assertion that the IJ referenced the "apparent inconsistency" between the alleged warrant for his arrest and his ability to legally exit the country on his own passport, despite the fact that he offered a logical explanation as to why his name may not have been included on the list. However, that was but one factor the IJ relied upon in rendering an adverse credibility determination. The IJ noted additional contradictions, such as petitioner's stated reasons for filing his untimely I-589 application. Rehman fails to argue that the record, considered as a whole, is otherwise insufficient to support the BIA's implicit determination that he failed to establish past persecution or the existence of a well-founded fear of future persecution, and that a reasonable adjudicator would be *compelled* to conclude to the contrary where the document that served as an important part of the foundation for petitioner's claim was found to be fraudulent and other contradictions were noted as well. Moreover, even without the additional credibility issue, the FIR finding was certainly significant in this case. See, e.g., Siewe v. Gonzales, 480 F.3d 160, 170 (2d Cir. 2007)("In the immigration context, a single false document or a single instance of false testimony may (if attributable to the petitioner) infect the balance of the alien's uncorroborated or unauthenticated evidence."); Matter of O-D-, 21 I & N Dec. 1079, 1083 (BIA 1998) (holding that presentation of counterfeited documents, "in the absence of an explanation regarding such presentation, creates serious doubts regarding the [applicant's] overall credibility.").

Finally, we decline Rehman's invitation to take judicial notice of changed country conditions and to remand this matter for additional factfinding. Aside from the fact that

8

this Court's review is confined to the administrative record, see Gomez-Zuluaga v. Attorney General, 527 F.3d 330, 340 (3d Cir. 2008)(citing INA § 242(b)(4)(A), 8 U.S.C. § 1252(b)(4)(A)), Rehman fails to offer support for the contention that such a course of action is warranted given the adverse credibility determination rendered by the BIA.

Accordingly, the petition for review will be denied.